**MADIGAN et al. v. UNITED STATES.***

Circuit Court of Appeals, Eighth Circuit.
November 23, 1927.

No. 7905.

**1. Criminal law ⬤⇒59(2)—Accessories may be indicted, tried, and convicted as principals (18 USCA § 550).**

Accessories either before or after the fact at common law are made principals by 18 USCA § 550, and may be indicted, tried, and convicted as such.

**2. Post office ⬤⇒50—In prosecution for robbery of mail, case held for jury as to guilt of one defendant (18 USCA § 320).**

In prosecution for robbery of mail, under 18 USCA § 320, evidence *held* sufficient to take to jury question of guilt of defendant, who claimed ignorance as to intentions of codefendants.

**3. Post office ⬤⇒49(1)—There is presumption that guns pointed at custodian of mails in effecting robbery were loaded (18 USCA § 320).**

In considering threatening use made of firearms and pointing them at custodian of mails, it is not necessary, in prosecution under 18 USCA § 320, for robbery of mails, to prove the guns were charged; presumption being that they were loaded until contrary is proved.

**4. Post office ⬤⇒50—In prosecution for robbing mail, whether guns of defendants were loaded held for jury on conflicting evidence (18 USCA § 320).**

In prosecution, under 18 USCA § 320, for robbery of mail, testimony of one participant that guns were not loaded, opposed by contrary testimony, *held* to take to jury question whether such guns were loaded.

**5. Post office ⬤⇒45—Robbery of mail is committed by putting custodian's life in jeopardy, when robbers' acts created well-grounded apprehension of danger to custodian's life in case he resisted (18 USCA § 320).**

Where robbery of mail has been committed by defendants, whose acts created in mind of custodian of mails well-grounded apprehension of danger to life in case of resistance, robbery was committed by putting his life in jeopardy, within 18 USCA § 320.

**6. Post office ⬤⇒45—That mail clerk assisted robbers in robbing mail held not to preclude conviction for robbery by putting custodian's life in jeopardy (18 USCA § 320).**

That one mail clerk assisted robbers will not prevent conviction, under 18 USCA § 320, for robbing mail by putting custodian's life in jeopardy, notwithstanding he had immediate possession of mail, since he cast off official possession and duties when assisting in robbery leaving the other mail clerk in car the only person representing United States as custodian when robbers entered.

**7. Criminal law ⬤⇒829(1)—Refusal of instructions covered by instructions given held not error.**

Refusal of requested instructions in criminal prosecution *held* not error, where instructions

*Rehearing denied February 10, 1928.

given by court of its own motion properly declared law on subject.

**8. Criminal law ⬤⇒528—Confessions are restricted as evidence to individual defendants making them.**

In prosecution for robbery of mail, instruction that confessions are restricted as evidence to individual defendants making them *held* proper.

**9. Criminal law ⬤⇒507(1)—Testimony of codefendants testifying for state must be corroborated.**

In prosecution for robbing mail, instruction that jury should not accept testimony of codefendants testifying for state, unless it be corroborated by testimony of other witnesses, or by other facts and circumstances, *held* proper.

**10. Criminal law ⬤⇒561(3)—Evidence of defendant's good reputation may generate reasonable doubt in mind of juror.**

In prosecution for robbing mail, instruction that evidence of good reputation of defendant might generate reasonable doubt in mind of juror *held* proper.

**11. Conspiracy ⬤⇒47—Post office ⬤⇒49(13)— Evidence held to support conviction for conspiracy to rob and robbing of mail (18 USCA § 320).**

In prosecution under 18 USCA § 320, for robbing mail and for conspiracy to commit crimes defined by such section, evidence *held* sufficient to sustain conviction.

In Error to the District Court of the United States for the District of Wyoming; T. Blake Kennedy, Judge.

Jack W. Madigan and others were convicted of robbing mail, in violation of 18 USCA § 320, and of conspiring to commit the crimes defined therein, and they bring error. Affirmed.

Arthur R. Morrison, of Denver, Colo., for plaintiff in error Madigan.

F. W. James, of Salt Lake City, Utah (Richard O. Pearse, of Salt Lake City, Utah, on the brief), for plaintiffs in error Sourlokulos, Kearns, Kamariotis, and Theodore.

Edward T. Lazear, of Cheyenne, Wyo., for plaintiff in error Barnett.

Albert D. Walton, U. S. Atty., of Cheyenne, Wyo. (Clyde M. Watts, Asst. U. S. Atty., of Cheyenne, Wyo., on the brief), for the United States.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge. Shortly after 1 o'clock a. m. August 14, 1926, the west-bound mail train on the Union Pacific Railway stopped at the coal chute at Hanna, Wyo., and was there boarded by two men who concealed themselves in the storage mail car for

a time. The door to that car was not locked. Soon thereafter they entered the car immediately in front, in which Albert J. Miller, who was in charge of the train and in custody of all the mail carried, and Jack W. Madigan, a mail clerk who handled the registered mail, were engaged in assorting the mail, both registered and general, for delivery at points of destination. The two men wore masks and were armed, having in their hands drawn revolvers. As they entered they said to Miller and Madigan: "Hit the floor face down." Madigan at once complied; Miller hesitated for a moment. One of the men poked him in the ribs with his gun and Miller then fell upon the floor. They were then bound hand and foot by the two men, taken into the storage car, placed upon the floor and Miller told to keep his eyes away or they would blow his head off. The two men returned to the mail car. Miller and Madigan remained in the storage car until the train reached Rock Springs an hour or more later, when their condition was discovered and they were released. Miller then went into the mail car and counted 28 mail pouches that had been cut open, containing both registered and ordinary mail. Much of the mail had been carried away and the two men had disappeared. Miller testified that when the two men entered the car he thought they were determined to rob the mails, so he threw up his hands in submission. He then started to turn around, they poked him with a gun and he hit the floor. It required several months' investigation to ascertain the perpetrators of the crime. It was then discovered that the two masked men had several confederates, one of them was Madigan. They had planned its commission with him and he had left the door to the storage car unlocked so they could enter when the train stopped to take coal at Hanna.

The plaintiffs in error, Madigan, Kearns, Barnett, Kamariotis, Theodore, and Sourlokulos were jointly indicted with one Bradford, one Ellis and one Edna Nagley. Bradford and Ellis entered pleas of guilty to counts 6 to 11, inclusive; and as to them counts 1 to 5, inclusive, were nol. prossed. They testified for the prosecution on the trial of the other defendants. Madigan, Kearns, Kamariotis and Barnett were found guilty on all eleven counts. Theodore and Sourlokulos were found guilty on counts 6 to 11, inclusive, and Edna Nagley guilty only on the eleventh count. The eleventh count charges a conspiracy between all of the defendants to commit the crimes defined in the preceding ten counts, which are all based on section 320 of title 18, USCA. That section reads in this way:

"Whoever shall assault any person having lawful charge, control or custody of any mail matter, with intent to rob, steal, or purloin such mail matter or any part thereof, or shall rob any such person of such mail or any part thereof, shall, for a first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery, he shall wound the person having custody of the mail, or put his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

The first five counts charged that Albert J. Miller was at the time a railway postal clerk in the Post Office Department of the United States and had in his custody, charge and control the mail matter of the United States on said train, that the defendants did feloniously rob the said Miller of the said mail matter, specifying in each count particular articles of mail contained in different pouches, and that in effecting said robbery the defendants put the life of said Albert J. Miller in jeopardy by the use of certain dangerous weapons, to wit, pistols and revolvers. The only difference in the first five counts consists in a difference in description of the mail matter that was taken. Counts 6 to 10, inclusive, make the same charges as those contained in the first five counts, except they omit the charge that the defendants put the life of Miller in jeopardy by the use of dangerous weapons.

[1] Madigan, Kearns and Barnett made written confessions, Bradford and Ellis plead guilty and testified in behalf of the prosecution. Many other witnesses were called, and the entire plan mapped out by the defendants under which the crime was perpetrated was fully exposed. The evidence shows that each was to perform his part, and there can be no doubt of its sufficiency to sustain the verdicts of guilty against each of the defendants. Those who were accessories, either before or after the fact at common law, are made principals by the Act of Congress, section 550, title 18, USCA, and were indicted, tried and convicted as such.

The errors assigned and relied on for reversal are so obviously devoid of any merit that it is hardly necessary to do more than state them to show their fallacy.

[2] 1. It is urgently claimed that there was no evidence to support the verdicts finding Sourlokulos guilty, but there are many facts and circumstances tending strongly to support the conclusion of his participation. He

admitted that he received $100 of the money stolen from the mails from some of his co-defendants. He denied that he knew where it came from, but the facts in the case were sufficient to support the conclusion that he did know. There was testimony that he was with some of his codefendants when they bought an automobile to be used in carrying out the robbery and that he contributed a few dollars at the time. This he denied. There is evidence that he was with some of his codefendants on occasions when they were discussing the plan to be carried out. There is evidence that he was an intimate friend of Kamariotis, that one of the defendants purchased from Sourlokulos the .45 automatic gun which Kamariotis had in his hand at the time he and Barnett entered the mail car, and there is evidence that he went to Rock Springs after the robbery and brought Edna Nagley from there to Ogden, Utah, on the train. She had been taken there prior to the robbery to maintain a rendevouz for those who were to participate in its perpetration. Sourlokulos did not deny being in company with the other defendants on many occasions, both before and after the robbery, but he claimed ignorance as to their intentions and the plans which they laid out. We have no doubt that as to him there were sufficient facts to go to the jury and make an issue for their determination as to his guilt or innocence.

[3-5] 2. Kamariotis was brought from Portland, Oregon, about one year after the crime was committed. During that journey he talked freely to a post office inspector and admitted his part in the robbery. He stated that he and Barnett were both armed when they entered the mail car, one of them had a .38 revolver and the other a .45 automatic. At the trial he took the witness stand and testified that he told Barnett just before they entered the car that he did not believe they would need any bullets in the pistols, that he took the bullets out of both guns and put them in his pockets, and that there were no bullets in them when they entered the car. Barnett in his confession said that just before they entered the car they handed him a loaded gun and showed him how to operate it. Kearns was with them at the time. He also had a gun, but when it came time to enter the car he refused to go in. On Kamariotis' testimony it is insisted that the proof shows that the life of Miller, the custodian, was not put in jeopardy. This question had early consideration by Mr. Justice Baldwin in instructing a jury on the circuit, in the case of United States v. Wilson et al., Fed. Cas. No. 16,730. In considering the threatening use

made of fire-arms in pointing them at the custodian of the mails, he said it was not necessary that it be proved that the guns were charged, the presumption being that it was so until the contrary should be proved. Under this rule, and the testimony and circumstances in this case, we think it was a question of fact for the jury. They were not compelled to accept the testimony of Kamariotis on the point. Furthermore, in that case the learned Justice said to the jury, in his exposition of the statute:

"If, therefore, you shall believe that a robbery of the mail has been committed by the prisoner; and that in effecting it he has done such acts as created in the mind of the driver a well grounded apprehension of danger to his life, in case of resistance or refusing to give up the mail; if his life was actually in danger, or he really believed it to be so, then the robbery was committed by putting his life in jeopardy."

This principle was restated by Judge Maxey in charging the jury in United States v. Reeves (C. C.) 38 F. 404. We are impressed with the soundness of this construction of the statute. The trial court took this view of the law and instructed the jury:

"Putting the life of a custodian of the mail in jeopardy is effected when a demand for submission and surrender of the mail is made of the person in charge thereof with a show of weapons calculated to take his life, such as pistols, thereby putting him in fear of his life."

[6] 3. It is argued that inasmuch as Madigan assorted the registered mail, had immediate possession of it, handed it out at points of delivery and took receipts for it, he was the custodian of it, his life was never put in jeopardy and hence there could be no conviction on the first five counts. Conway v. United States (C. C. A.) 1 F.(2d) 274. But the proof is that Miller had general supervision and custody of all mail, registered and unregistered, on the train. In fact he was the only person in the car when the robbers entered who represented the United States as its custodian. Madigan had cast off his official position and duties, and was assisting the two masked men in robbing Miller of the mail. The statute deals with substance, not mere form. Randazzo v. United States (C. C. A.) 300 F. 794.

[7-11] 4. It is complained that the court erred in not giving requested instructions on confessions, on the weight to be given to the testimony of an accomplice, and to testimony of the previous good reputation of a defendant. It is sufficient to say that the instruc-

tions given by the court of its own motion properly declared the law on these subjects. Confessions were restricted, as evidence, to the individual defendants making them, the jury was cautioned against accepting the testimony of codefendants unless it be corroborated by the testimony of other witnesses than defendants, or by other facts and circumstances. On the subject of evidence as to the good reputation of a defendant, the jury was advised that such evidence might generate a reasonable doubt in the mind of a juror. The case was well and carefully tried, all of the applicable principles of law to the charge and the facts were clearly and fully stated in the court's instructions, the evidence was amply sufficient to sustain all of the verdicts of guilty, and the judgments are

Affirmed.