HORNSBY *v.* THE STATE OF OHIO.

(Decided June 11, 1928.)

*Mr. John H. Doyle* and *Mr. Henry L. Rockel,* for plaintiff in error.

*Mr. Charles P. Taft, II,* prosecuting attorney, and *Mr. Louis F. Britten,* for defendant in error.

HAMILTON, P. J. Plaintiff in error, Chester Hornsby, was convicted in the court of common pleas of Hamilton county on the charge of stealing

a certain motor vehicle, the property of the Rent-A-Car Company. Motion for a new trial was over-ruled by the trial court, and Hornsby was sentenced to the reformatory.

The indictment upon which the conviction was had is as follows:

"The State of Ohio, Hamilton County.
"The Court of Common Pleas of Hamilton County.
"Term of January in the Year Nineteen Hundred and Twenty-Eight.
"Hamilton County, ss.:
"The Grand Jurors of the County of Hamilton and by the authority of the State of Ohio, upon their oaths and affirmations present that Chester Hornsby and Alex Runion on or about the 14th day of January in the year nineteen hundred and twenty-eight, with force and arms, at the County of Hamilton and State of Ohio, unlawfully did steal, take and drive away a certain motor vehicle, to-wit: an automobile, the personal property of Rent-A-Car Company, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio."

The specifications of error are: That the conviction and judgment are against the weight of the evidence; that the court erred in refusing to give special charge No. 1, requested by plaintiff in error; and error in the general charge in charging on the question of aiding and abetting, since there was no allegation in the indictment that Hornsby was an aider and abettor.

The first question we will consider is whether or not it is necessary that the indictment allege the charge of aiding and abetting to justify the court

in charging on the question and submitting it to the jury. This question is not free from doubt.

For the purpose of the consideration of this question it may be conceded that the only evidence in the case tends to show the plaintiff in error, Hornsby to be an aider and abettor in bringing about the stealing of the automobile.

Section 12380, General Code, provides:

"Whoever aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender."

The common-law rule was that no accessory could be tried until the principal had been convicted. In this case, Runion, jointly indicted, was the principal in the case. He has not been apprehended; nor was it proven that he stole the automobile. However, the American decisions hold that under our statute it is not necessary to apprehend and convict a principal before the accessory, or aider and abettor, can be tried.

The first case in which this question was presented was *Noland* v. *State,* reported in 19 Ohio, 131. In the course of the opinion the court said:

"We think the legislature have made the crime, with which the defendant is charged, a substantive, independent offense, not in any way dependent for its punishment on the conviction of the principal offender."

In that case, however, the indictment charged the defendant with "aiding, abetting, and procuring," etc.

The case of *Brown* v. *State,* 18 Ohio St., 496, follows the holding in the case of *Noland* v. *State, supra.* The court in the opinion says, at page 508:

"The well known common-law rule, that an accessory cannot be tried or convicted until the principal offender has been first convicted, we do not deny. But the statute under which this indictment was found, as we understand it, makes the crime of advising, aiding or participating  *  *  *  a substantive and independent offense."

The indictment in the case of *Brown* v. *State,* however, charged the defendant with aiding and abetting the act.

In the case of *Hanoff* v. *State,* 37 Ohio St., 178, 41 Am. Rep., 496, it is stated in the opinion, at page 184:

"The statute in direct terms authorizes the prosecution and punishment of any one who is an aider or abettor, as a principal offender. Under the former statute  *  *  *  the act of aiding and abetting was an independent offense punishable the same as the act of the principal offender. It did not declare how he should be prosecuted. Hence the common law forms of indictment were resorted to, and he was indicted as an aider and abettor of a principal."

In *Goins* v. *State,* 46 Ohio St., 457, at page 462 (21 N. E., 476, 478), the court said:

"Under this statute [aiding and abetting statute], or others like it in this respect, aiding, abetting or procuring a crime to be committed has been held to constitute a substantive offense, and that the aider, abettor or procurer, might be tried before the principal offender."

In this latter case the indictment charged the defendant with aiding and abetting.

These cases would lead to the conclusion that,

while it is not necessary that the principal offender be known or prosecuted before the prosecution of the aider and abettor can be had, it would be necessary to allege the charge of aiding and abetting in the indictment before the defendant could be held to answer to the charge. It is stressed in all these decisions that the offense is a substantive, independent offense; and, if so, logic would lead to the conclusion that the strictness required in criminal procedure would make it necessary to allege the offense of aiding and abetting specifically in the indictment.

We would be inclined to this view of the law were it not for the case of *State* v. *Doty*, 94 Ohio St., 258, 113 N. E., 811. In that case the indictment charged one Gabriel Sullivan, the defendant Herbert Doty, and three others, jointly, as principals in the crime of murder in the first degree in causing the death of one James Shall by the use and discharge of a pistol. The defendant Doty was tried separately. The evidence disclosed that Doty's connection with the case was as an aider and abettor. Sullivan carried out the conspiracy by firing the shot which killed Shall. The Supreme Court said at page 263 of 94 Ohio St. (113 N. E., 813):

"And if Doty engaged in a conspiracy or common design, having for its purpose the use of deadly weapons or force and violence upon the workmen at Christ Hospital, and the crime committed was the natural and probable consequence of the execution of such common design, or was undertaken under such circumstances as would probably endanger human life, then Doty, under our statute, would

be equally guilty with Sullivan who actually fired the shot.'' Citing *Goins* v. *State, supra.*

In the case of *Hanoff* v. *State, supra,* the third paragraph of the syllabus is:

''Section 6804 [Section 12380, General Code] of the Revised Statutes authorizes the prosecution, as well as the punishment, of aiders and abettors as principal offenders. Hence, one indicted as a principal, may be convicted on proof that he was an aider and abettor.''

This paragraph of the syllabus in the *Hanoff case* is directly in point. Hornsby, in the case under consideration, was indicted as a joint principal with Runion. The evidence disclosed he was but an aider and abettor, and on the proof that he was an aider and abettor he was convicted as a principal of the theft.

While it is difficult to reconcile all these decisions, it would seem that the later ones, which are controlling, require us to hold that while Hornsby was indicted as a principal offender, the court properly instructed the jury on the question of aiding and abetting. If the proof was sufficient to convict as an aider and abettor, the conviction as a principal must stand.

It is urged that the court erred in refusing to submit defendant's special instruction before argument. That the court is not required to give special instructions in criminal cases before argument was decided in the case of *Wertenberger* v. *State,* 99 Ohio St., 353, 124 N. E., 243.

It is urged that the court erred in admitting, over defendant's objection, the claimed confession of the defendant Hornsby. Since this question bears on

the weight of the evidence, which we will next consider, this point will be discussed in connection therewith.

The facts in the case, disclosed by the record, are in substance as follows: The defendant Hornsby was an insurance solicitor. He had frequently rented cars from the Rent-A-Car Company, for use in his business. On the 14th day of January, 1928, he went to the Rent-A-Car Company garage and rented a Chrysler car, depositing $10 with the company. This was about 4 o'clock in the afternoon. He drove a few squares from the garage and there picked up a man by the name of Runion, whom he had known for a long time, and who accompanied him in his rounds of soliciting business during the balance of the afternoon. Runion was an insured in the company represented by Hornsby, and he paid his insurance for seven weeks. He called on several of his other customers and made collections, returning to his (Hornsby's) rooms at 1212 Broadway about half past 6. On the return Runion asked Hornsby for the use of the car for a while, and Hornsby granted him the use of the car and directed its return to him by 7 o'clock, as he wanted to go to the hospital to get a girl friend to go to the theater. Runion returned the car promptly. Hornsby then drove to the hospital, got the young lady friend, and drove downtown within half a square of the Rent-A-Car garage on Sixth street, and left the car. It was then about 8 o'clock. Accompanied by the young lady, he went to the garage and gave the proprietor or his employee the keys to the car, stating that he had left it up the street and that he desired to use the car after the theater to

take the girl home, when, after such use, he would return the car. The employee of the Rent-A-Car garage asked him if he had locked the car and put the lights out, and Hornsby informed him that he had locked the car, but had only dimmed the lights. Thereupon the employee took the keys and went to the car, found the transmission locked, turned out the lights, and returned to the garage. Hornsby and his young lady friend went to the theater, sat throughout the entire performance, and returned to where he left the car, but it was not there. He, with the girl, went to the garage and asked them if they had moved the car, stating that it was not where he had left it. They informed him that they had not moved it, and the proprietor went with Hornsby to the place where he had left the car, but it was not there. Thereupon, Hornsby with the proprietor went to the First District Police Station and reported the car stolen.

A week later Hornsby was awakened in his room about 2 o'clock in the morning by three men, two of whom were members of the police department, who accused him of stealing the car, and asked him if he knew a man by the name of Runion, and took him down to the Second District Police Station, placing him in a cell, and, as he says, tried to force him to make a confession. He remained in the cell, without any charge being placed against him, and on Sunday he sent for an attorney. His attorney asked the police officials what the charge was, and found they had placed no charge against Hornsby, but they were holding him. They informed him they would probably let him go the next day, as Runion was the man they were after; that they had

nothing on Hornsby. Counsel for Hornsby demanded that he be released or he would secure a writ of *habeas corpus*. On Monday he filed a writ of *habeas corpus* in the court of common pleas of Hamilton county, but, before the case was heard, an affidavit, charging automobile stealing, was lodged against Hornsby, and the writ was refused.

On Tuesday morning, it is claimed, Hornsby made the confession, and it is on that confession, and that only, that Hornsby was convicted in this case, as his confession supplies the only evidence of his connection with the case. The confession was tendered by the prosecutor at the trial, and was objected to by counsel for the defense, claiming that the confession was obtained by promises and intimidation. The court thereupon heard the evidence on the *voir dire* concerning the confession, and admitted it.

It appears from the record that the police department deny intimidation or promises. Hornsby claims that he was abused, cursed, and that he was threatened if he did not "come across" and make a confession and tell where Runion could be found, and where the car could be found, he would suffer; that after two interviews of this character he was told that if he would make a confession he would be released, as it was Runion they were after. He said that a stenographer took down some things he had said, and they were transcribed, and he signed whatever the paper contained; that he thought if he did not sign he would have to take a beating, and, that if he did, he would be released. All of which was denied by the representatives of the police department. The confession, in substance, is that Runion gave Hornsby $10 to deposit for the rental of

the car; that he (Hornsby), after using the car, was to leave the car at the place where it was afterwards left, where Runion could steal it; and that he (Hornsby) knew that Runion intended to steal the car when he left it at the place he did.

Hornsby was a boy 19 or 20 years of age. The confession is so extraordinary that it is difficult to account for it. There is no evidence as to who stole the car, or what became of it. Neither the car nor Runion has ever been found. Hornsby was to receive nothing.

We are therefore of opinion that there remains a reasonable doubt as to the guilt of Hornsby, taking into consideration the facts as above recited, and the doubt thrown on the confession by the question whether or not it was voluntary. We therefore hold that the judgment of conviction fails to meet the requirements of the law as to the burden of proof.

The judgment of the court of common pleas is reversed, and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

MILLS and CUSHING, JJ., concur.