ROMEO *v.* THE STATE OF OHIO.

(Decided January 14, 1931.)

*Messrs. Sheck, Stevens & Hargreaves,* for plaintiff in error.

*Mr. James M. Aungst,* prosecuting attorney, for defendant in error.

LEMERT, J. In this case the defendant, James Romeo, was indicted in Stark county, Ohio, for first-degree murder, in the May term, 1930. The indictment contained two counts: One for the killing of Charles N. Riblet, while in the perpetration of a robbery; while the second charged the defendant below, James Romeo, with the killing of Charles N.

Riblet, a police officer, while in the performance of his duty. At the conclusion of all of the testimony in the trial, the court below, upon defendant's motion, discharged the defendant upon the second count in the indictment, to wit, the killing of a police officer in the performance of his duty, because of failure on the part of the state to prove the allegations in that count, and all the evidence bearing upon such allegation was at the time withdrawn from the consideration of the jury, and the case proceeded and went to the jury upon the first count, only, to wit, killing while in the perpetration of a robbery. Upon this count the jury found the defendant guilty of murder in the first degree, without a recommendation of mercy.

The case is now before this reviewing court upon a petition in error, wherein numerous grounds of error are urged, but in the oral argument only three grounds of error are pressed:

1. Abuse of discretion in the court below in refusing to grant the defendant a continuance of the case.

2. For the introduction of exhibits as evidence in the case.

3. Error of the court in his charge and in refusal to charge the jury.

It is not our intention or purpose to go into a long discussion of this lengthy record, but we do desire to set forth the salient points as disclosed by the record in order to intelligently arrive at the conclusions which follow:

On the morning of July 16, 1930, at about the hour of 20 minutes to 10, Jacques Morris, teller of the First National Bank of the city of Canton, Ohio,

and Ex-Chief Charles N. Riblet, employed as a police officer and guard at the First National Bank, left said bank with a package containing $60,000 in currency; the same to be shipped to the Federal Reserve Bank in Cleveland. They were on their way to the post office, and at about the hour of 15 minutes to 10, while they were in front of what is known as the "Canton City Health Building," which joins the post office, and on Cleveland avenue southwest, Canton, Ohio, two bandits approached them and ordered them, using vile language and expressions, to "stick them up." The testimony in the court below showed that the defendant below, Romeo, covered Morris with his gun, and one Kish, alias Williams, covered Chief Riblet. Chief Riblet, instead of "sticking them up," opened his coat to draw his gun, and the bandit Kish, alias Williams, opened fire on him. Kish fired three or four shots. Riblet, with his gun in hand, fired one shot at Kish, alias Williams, which shot killed Kish almost instantly. Chief Riblet was shot through the chest and lung and died on July 20 of hypostatic pneumonia, superinduced by a bullet wound. While Kish and Chief Riblet were shooting it out, the defendant below, Romeo, took the $60,000, and ran to a stolen Chevrolet car, double parked in front of the post office. The testimony is not clear as to whether or not there was another man in the automobile. Romeo drove this car up to the corner of Eighth and Dewalt streets, and parked the Chevrolet car behind a string of garages which front on Dewalt street northwest. He was seen by one John Cross and his son as he hurriedly wrapped up a package and walked rapidly down Dewalt street. They fol-

lowed him until he got as far as Sixth street, where they lost sight of him.

Returning to the scene of the robbery, Kish, alias Williams, was picked up from the sidewalk and taken to an undertaking parlor, where it was discovered that he was wearing two shirts, and two pairs of trousers.

The record in the case discloses that Romeo was positively identified at the scene of the crime by Albert Kalo, by Rev. William Bridge, and by Gertrude Watkins. Romeo at the time of the robbery wore a cap, dark glasses and a strip of adhesive tape over his nose, which tended to give his nose the appearance of having been broken.

Some time after Romeo left the automobile on Dewalt street the car was examined and the strip of adhesive tape which he wore over his nose was found in the car, together with a 38-caliber revolver, a pair of dark glasses, which he had worn, a cap which he had worn, a small bottle of cold cream or cleansing cream, and also the address tag, addressed to the Federal Reserve Bank at Cleveland, Ohio, which had been on the package containing the money.

As soon as Kish, alias Williams, was identified a search was made for Romeo. Romeo was arrested in a pool room at 221 Second Street Northeast, by Detective Fitzgerald, and taken to police headquarters. He was taken to the morgue, where Kish, alias Williams, was, and asked whether or not he knew Kish. Romeo at that time denied ever having seen him before. Romeo was then asked where he stayed in the city, and he gave his address as 221 Second street northeast, in the city of Canton, Ohio,

and he was taken by the chief of police and chief of detectives to this place and was unable to show the police officers where his room was. He was then taken back to headquarters. In the meantime police officers found that Romeo was registered at the Flory Hotel and was occupying room 109. Upon questioning, the clerk at the hotel informed the officers that Romeo had come into the hotel at about 10 o'clock a. m. carrying a loosely wrapped package. The officers searched his room and there found a 38-caliber revolver of Spanish make, and in the bottom drawer, wrapped in two packages, was $59,500 of the money taken from the First National Bank, wrapped in the original wrappers, which were fully identified by the bank. In a cubby or pigeon hole in the desk was found $400 in bills, and Romeo had on his person at the time of his arrest $104. The record discloses that the $60,000 was made up of packets of bills containing $500, each, so that the $60,000 taken from the First National Bank was recovered in the room of James Romeo at the Flory Hotel, with the exception of the $100 that was found upon his person at the time of arrest. An examination of the record discloses that in a statement made to the police by Romeo, which was offered in evidence, Romeo denied the money was in his room; denied that he knew Kish; denied that he could drive an automobile; denied that he was at the scene of the crime, or that he knew anything about it, or that he knew anything about the $60,000 which he had stolen. The record discloses that Romeo testified in his own defense, where he attempted to give the jury an explanation of how the money got in his room by saying that a man by the name of Pete Wilson drove

up to him in a car, accompanied by another man, whom he did not know, and said that they were in some trouble and asked Romeo to drive the car away for them, and saying to him that Charley Williams had just been shot. The claim was further made that Wilson told him that he would pay him $400 if he would drive the machine away and keep the money for an hour or so. Further examination of the record discloses that in the direct examination of Romeo he contradicted practically every statement he had made to the police officers.

This, in brief, was the testimony the jury had before it in this case for consideration and deliberation.

The indictment in this case was returned on July 23, 1930, a copy served upon the defendant, James Romeo, on the same day; the defendant was arraigned in open court on July 25, 1930, and the case was set for trial August 18, 1930, at 10 o'clock a. m., before Honorable Henry W. Harter, Jr., judge. An affidavit of prejudice was filed against the Honorable Henry W. Harter, Jr., as judge of the common pleas court, and the record discloses that after said affidavit of prejudice was filed the said Henry W. Harter, Jr., stepped aside and the case came on for trial before the Honorable Edwin W. Diehl, judge of the court of common pleas of Stark county.

The record discloses that on the 14th day of August, 1930, there was filed in the clerk's office an application to take the depositions of one Mike Romelo, who resided at Pittsburg, Pennsylvania, claim being made that he was a material witness for the defendant, but the record fails to show that any effort was made on the part of the defendant or his

attorneys to take or secure said deposition, although the record discloses that said application was by the trial court granted and time to take said deposition set for 2 p. m., August 15, 1930. A continuance was asked for on the part of the defendant and refused by the court, and this is one of the grounds of error claimed by the defendant herein. The record discloses further that the court had granted defendant's application to take the deposition, before the time of the commencement of the trial, and no effort was made on the part of defendant below to take same; that, after the commencement of the trial, continuance was asked to permit said deposition to be taken, and this was not done.

From an examination of the whole of the record in this case we doubt whether or not the application to take the deposition was made in good faith. It was not such an abuse of discretion on the part of the trial court as will amount to prejudicial error when the whole of the record is carefully viewed and considered.. Section 13442-8, General Code, which provides the order of proceedings of trial, provides that the trial of an issue upon an indictment or information shall proceed before the court or jury, as the case may be. The statute then states the order or manner in which the trial or case must be conducted, and the duty of the court to follow the law as laid down in this statute, but we note at the end of the statute that the following provision is made: "The court has authority to deviate from the foregoing order of proceedings when in its discretion it is deemed proper."

Therefore, carefully reviewing the record and the

law in this case, we find there is no merit in defendant's contention or claim of error No. 1.

As to error No. 2, the introduction of exhibits in the case, such as guns, clothing, and money taken, the record clearly shows a conspiracy on the part of the bandits to stage this holdup, and that Romeo had a part in this prearranged plan. Therefore it follows that the exhibits were properly introduced in evidence.

As to the third ground of error, to wit, the charge of the court, we find that the requests made were all given with the exceptions of 3, 8 and 14, and we believe these requests were properly refused, for the reason that they were either not applicable to the facts governing the case or were fully covered in other requests submitted and in the general charge. *Rucker* v. *State,* 119 Ohio St., 189, 162 N. E., 802; *Hornsby* v. *State,* 29 Ohio App., 495, 163 N. E., 923; *Kahoun* v. *State,* 33 Ohio App., 1, 168 N. E., 550.

We note that the court was exceedingly fair in his charge, and particularly so where he said:

"If the facts proven on this trial under this indictment are reconcilable with any other reasonable theory than that of the guilt of the defendant, then the verdict of the jury should be in favor of the defendant. It is not enough to justify a verdict of guilty that the facts proven are consistent with his guilt—such facts must be inconsistent with his innocence. If you find that the defendant did not participate in the robbery charged in this indictment, and received the money in question after the robbery had been perpetrated, and not in furtherance of a common plan, he is not guilty as charged in the indictment.

"The fact that the defendant received the money which was the proceeds of the robbery is not of itself sufficient to convict him of murder as charged in this indictment, unless you find the receiving of said money was in furtherance of a common plan in committing the robbery."

So that from a careful examination of the charge of the court in this case we find it to be free from error—in fact, we find it to be exceedingly fair to the defendant below.

These being the only grounds of error urged and insisted upon we find and hold that the defendant below had a fair and an impartial trial; that the verdict of the jury was fully justified from the evidence in the case; that the verdict of the jury was right; and that under the facts as disclosed from the record and the law governing this case there is no reason why this court should disturb the verdict.

Therefore the finding and holding is that the judgment of the court be, and the same hereby is, affirmed.

*Judgment affirmed.*

SHERICK and MONTGOMERY, JJ., concur.