## TUCKER v. UNITED STATES.
### No. 2302.

Circuit Court of Appeals, Tenth Circuit.

Oct. 14, 1941.

George C. Dyer, of St. Louis, Mo. (Robert R. Rittenhouse, of Oklahoma City, Okl., on the brief), for appellant.

Frank Watson, Asst. U. S. Atty., of Muskogee, Okl. (Cleon A. Summers, U. S. Atty., of Muskogee, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The appellant, William Dow Tucker, was indicted in the District Court of the United States for the Eastern District of Oklahoma, charged with the crime of unlawfully transporting and importing intoxicating liquor into the State of Oklahoma from the states of Mississippi and Arkansas, in violation of 27 U.S.C.A. § 223, commonly known as the Federal Liquor Enforcement Act of 1936. Appellant filed a plea in bar and motion to quash the indictment. The basis of these pleas was that the Federal Enforcement Act of 1936 did not apply to Oklahoma, because it did not prohibit the sale of all intoxicating liquors containing more than 4 per cent by volume of alcohol as required by the Federal Act. Both of the motions were overruled. Appellant thereupon waived trial by jury and consented that a trial be by the court. He was found guilty, sentenced, and has appealed.

It is agreed that the appeal is to be determined on the plea in bar and the motion to quash the indictment, and that the trial on the issues is not involved in this appeal, the sole question presented being whether the Federal Liquor Enforcement Act of 1936 is applicable to the State of Oklahoma.

The Federal Enforcement Act of 1936, so far as applicable, provides:

"§ 223. * * * (a) Whoever shall import, bring, or transport any intoxicating liquor into any State in which all sales (except for scientific, sacramental, medicinal, or mechanical purposes) of intoxicating liquor containing more than 4 per centum of alcohol by volume are prohibited, otherwise than in the course of continuous interstate transportation through such State, or attempt so to do, or assist in so doing, shall: (1) If such liquor is not accompanied by such permit or permits, license or licenses therefor as are now or hereafter required by the laws of such State; or (2) if all importation, bringing, or transportation of intoxicating liquor into such State is prohibited by the laws thereof; be guilty of a misdemeanor and shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"(b) In order to determine whether anyone importing, bringing, or transporting intoxicating liquor into any State, or anyone attempting so to do, or assisting in so doing, is acting in violation of the provisions of this chapter, the definition of intoxicating liquor contained in the laws of such State shall be applied, but only to the extent that sales of such intoxicating liquor (except for scientific, sacramental, medicinal, and mechanical purposes) are prohibited in such State."

As we said in Robason v. United States, 10 Cir., 122 F.2d 991, decided this day, it is obvious that Congress considered the terms 3.2 per cent by weight and 4 per cent by volume, when applied to intoxicants, as equivalents. The terms were used interchangeably when legislation dealing with intoxicating liquors was before Congress for consideration. We again call attention to the report of the Committee on Ways and Means upon the Cullen Beer Bill, in

282

which the terms 3.2 per cent by weight and .4 per cent by volume were used interchangeably.. Furthermore, it appears that when the 1936 Federal Liquor Enforcement Act was before Congress, while the bill contained the term "4 per cent by volume", Congress understood that that was the same or the equivalent of 3.2 per cent by weight. Mr. Cellers, a member of the Committee on Judiciary reporting the bill, in his report said: "The purpose of the bill is to enforce the twenty-first amendment to the Constitution of the United States, which was declared to be effective on December 5, 1933, and which guarantees Federal protection to 'dry' states against liquor-law violations directed from outside their borders. The bill extends this affirmative protection to States which forbid all sales for beverage purposes of intoxicating liquor containing more than 4 per cent of alcohol by volume (3.2 per cent of alcohol by weight)." So that when Congress considered and passed this bill, it had before it the report of its Committee, which said that the bill extended the protection of the federal laws to all states which prohibited all sales for beverage purposes of intoxicating liquors "containing more than 4 per cent of alcohol by volume (3.2 per cent of alcohol by weight.)" It therefore appears that in the very law which is being challenged, Congress considered that the law applied to intoxicants containing 4 per cent of alcohol by volume or 3.2 per cent by weight, and that Congress considered that the two terms were either equivalent or so near thereto that the Act was intended to apply to both.

The evidence adduced at the hearing on the plea in bar and the motion to quash the indictment amply sustains the finding that 4 per cent of alcohol by volume and 3.2 per cent by weight are substantially the same. We are not unmindful of the evidence given by chemists produced by appellant, which in substance is that beer containing 3.2 per cent of alcohol by weight will always contain more than 4 per cent by volume at standard, recognized temperatures; that tests had shown that samples of beer containing 3.2 per cent of alcohol by weight contained 4.10 per cent, 4.11 per cent and

4.14 per cent by volume; that a sample of eggnog containing 3.2 per cent of alcohol by weight was shown to contain 4.45 per cent of alcohol by volume; that the chemist testifying had made a concoction consisting of whisky, lemon juice, water, sugar and alcohol; the mixture contained 3.2 per cent of alcohol by weight and 4.44 per cent by volume; and other like evidence. Appellant's chemist also testified that the only way that any difference can be found between a beer containing 3.2 per cent of alcohol by weight and 4 per cent by volume is by chemical analysis. He also testified that "we chemists split the hairs." A chemist employed in the Alcohol Tax Unit Laboratory in Kansas City, Missouri, testified for the government that from his experience, either in the liquor enforcement laws or the manufacture and distribution of beer, the industry regards 3.2 per cent of alcohol by weight or 4 per cent by volume as synonymous for all practical purposes; that tests of the same liquid made by different laboratories will produce different results; that the same beer tested on different days at the same temperature will show different percentages.

We have no difficulty in concluding that the evidence established that for all practical purposes a liquor containing 3.2 per cent of alcohol by weight is the same as one containing 4 per cent by volume. We do not believe that it was the intent of Congress to establish a standard for determining whether a state had complied with the federal law that could only be ascertained by chemical laboratory tests, the results of which would themselves not only vary, but be reached by chemists "splitting hairs." It is our conclusion that Congress intended to approach the problem in a practical way and intended by the act to aid any state in the enforcement of its prohibitory laws which prohibited the sale of intoxicating liquors containing substantially more than four per cent by volume. The liquor laws of Oklahoma place it in compliance with the federal law, and the Federal Liquor Enforcement Act of 1936 is applicable to the state of Oklahoma.

The judgment is affirmed.