VON PATZOLL v. UNITED STATES.

BRANDON v. SAME.

FEEZELL v. SAME.

EVANS v. SAME.

Nos. 3442–3445.

Circuit Court of Appeals, Tenth Circuit.
July 9, 1947.

Rehearing Denied Aug. 14, 1947.
Writ of Certiorari Denied Oct. 27, 1947.
See 68 S.Ct. 110.

BRATTON, Circuit Judge, dissenting.

————◆————

See also 10 Cir., 163 F.2d 221.

Earl Pruet and J. B. Barnett, both of Oklahoma City, Okl., for appellants.

Robert E. Shelton, U. S. Atty., of Oklahoma City, Okl., for the United States.

Before PHILLIPS, BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Von Patzoll, Brandon, Feezell, and Evans were charged by information containing two counts with violations of 27 U.S.C.A. § 223, which makes it unlawful to "import, bring, or transport any intoxicating liquor into any State in which all sales * * * of intoxicating liquor containing more than 4 per centum of alcohol by volume are prohibited * * * or assist in so doing." The first count charged that they unlawfully transported intoxicating liquor from the State of Texas into the State of Oklahoma, the latter being a state wherein all sales of intoxicating liquor containing more than 4 per cent of alcohol by volume are prohibited. The second count charged that they unlawfully assisted in such transportation. They were tried to the court without a jury and found not guilty on the first count and guilty on the second count.

The defendants offered no evidence at the trial. The government's evidence established these facts: On June 8, 1946, Roy B. Mogridge and Ralph Bratcher, investigators for the Alcohol Tax Unit, knowing that Von Patzoll had been a liquor dealer in Oklahoma City for a number of years, were watching liquor stores in Dallas, Texas. They were in an automobile. They saw Von Patzoll's automobile, a Buick coupe, parked in front of the LaMar Liquor Store at Dallas, Texas, and observed two men in the street, and Von Patzoll talking to the manager of the Liquor Store. They drove past the Buick coupe and stopped for a traffic light. The Buick coupe came up beside them and passed on ahead of them. They followed it a short distance and then turned around and came back to the Liquor Store and parked. About an hour later, they again observed the Buick coupe at the Liquor Store. Von Patzoll and one other man were in the Buick coupe and a third man was in the store. In a short time, Von Patzoll and the two men left the Liquor Store. About 10 o'clock that night, the investigators saw a man, later identified as Brandon, get out of the Buick coupe and walk across the street to the Leeway Parking Lot and go to an International truck with a semi-trailer bed. He drove away in the truck. The truck was then empty. The truck proceeded to a filling station on Corinth Street. The investigators passed the filling station, turned, drove back, and observed the truck at the filling station with some one in it. Mogridge and Bratcher advised investigators Lamphear and Pauly by radio that they had followed the truck and that it was at the filling station. Lamphear and Pauly then drove past the filling station and saw a Buick sedanette move into the filling station and park alongside the truck, and observed a man loading a package, which resembled a case of whiskey, into the truck. They advised Mogridge and Bratcher of that fact by radio. Mogridge and Bratcher then drove back to the filling station and observed the International truck moving north on LaMar Street, followed by the Buick sedanette. They then

notified Lamphear and Pauly that the truck was moving and the four investigators followed it to Davis, Oklahoma. From the time they started to follow the International truck, it was within their sight until they seized it a short distance beyond Moore, Oklahoma. The International truck stopped at Davis, Oklahoma, and the driver went into an eating house, apparently to obtain coffee. Later, a man came out of the eating house, boarded the International truck, and drove it on to Moore, Oklahoma, arriving at the latter point about 4:05 a. m., June 9, 1946. The investigators did not identify the man who entered the eating house, neither was there testimony that the man who left the International truck at Davis to go into the eating house was the same man who drove the International truck from Davis to Moore. The International truck stopped alongside the road at Moore, Oklahoma. About 4:35 a. m., the Buick coupe came from the south and passed the International truck. It was followed by a Buick truck. The Buick coupe and the Buick truck stopped near to the International truck and Feezell alighted from the Buick coupe and boarded the International truck. Von Patzoll also alighted from the Buick coupe and walked over to the International truck. Brandon, the driver of the Buick truck, also came over to the International truck. There was a short conference between Von Patzoll and Brandon, and the trucks and the Buick coupe then proceeded on. The International truck was in front, the Buick truck behind it, and the Buick coupe behind the latter. The investigators followed them. After the International truck, the Buick truck, and the Buick coupe had proceeded outside of Moore, the Buick truck passed the Internationl truck and disappeared. The Buick coupe continued to follow the International truck. The in-vestigators first stopped and took charge of the Buick coupe driven by Von Patzoll. A short distance further, they stopped the International truck. They found Feezell and Evans in the International truck. They identified themselves as investigators and asked Evans what he had in the truck. Evans replied, "I have got what you are looking for." Mogridge replied, "We are looking for liquor." Evans said, "Well, I have got it." They searched the truck and found about 30 cases of whiskey therein. They seized the International truck, the Buick coupe, and the whiskey.

Lamphear and Pauly then undertook to locate Brandon and the Buick truck. After proceeding about 100 yards, they observed a car running without lights. They stopped it and found Brandon in the car. They searched the Buick truck but found no liquor. The investigators found a fifth of tax-paid whiskey in the Buick coupe.

The investigators searched Von Patzoll at the time they arrested him and found sheets out of a notebook in his pocket with notations of prices and brands of whiskey, and addresses of liquor dealers in Dallas, Texas.

18 U.S.C.A. § 550 provides, "whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

This statute does away with the subtle distinctions recognized, with respect to felonies at common law, between principals and accessories before and at the fact and makes them all principals, whether the offense is a felony or a misdemeanor.[1]

Conviction of the principal is not a prerequisite to the conviction of the aider and abettor.[2]

---

[1] Rooney v. United States, 9 Cir., 203 F. 928, 932; Colbeck v. United States, 7 Cir., 10 F.2d 401, 403; Sugar v. United States, 6 Cir., 252 F. 79, 85; Di Preta v. United States, 2 Cir., 270 F. 73, 75; Kelly v. United States, 6 Cir., 258 F. 392, 402; Richardson v. United States, 3 Cir., 181 F. 1, 6; Ruthenberg v. United States, 245 U.S. 480, 483, 38 S.Ct. 168, 62 L.Ed. 414; United States v. Dotterweich, 320 U.S. 277, 281, 64 S. Ct. 134, 88 L.Ed. 48. See, also, Morei v. United States, 6 Cir., 127 F.2d 827.

[2] Kaufman v. United States, 2 Cir., 212 F. 613, 617, Ann.Cas.1916C, 466; Beauchamp v. United States, 6 Cir., 154 F.2d 413, 416; Rooney v. United States, 9 Cir., 203 F. 928, 933; State v. Bogue, 52 Kan. 79, 34 P. 410, 412; Goins v. State, 46 Ohio St. 457, 21 N.E. 476, 478;

■ And the acquittal of the principal presents no impediment to the trial and conviction of a person charged with aiding and abetting the commission of the crime.[3] This because one who aids or abets the commission of a crime is guilty as a principal of a substantive, independent offense.[4]

■ The proof must establish that the offense was committed by some one and that the person charged as an aider and abettor, aided and abetted in its commission.[5] However, it is not necessary to identify the actual perpetrator of the crime. He may be unknown.[6]

■ The fact that one mistakenly supposed to have committed the crime was tried therefor and acquitted does not affect the guilt or liability to punishment of one proven to have been present aiding and abetting, so long as it is established that the crime was committed by some one. In Regina v. Wallis, 91 Eng.Rep. R. 294, there was an indictment against A for the murder of Cooper, and against E and others, as persons present assisting, aiding, and abetting A therein. In the opinion the court said: "* * * upon evidence it appeared, that the person slain was a constable, and in the execution of his office with divers other constables in May-Fair. That E. the prisoner first drew his sword, and with divers others, to the number of forty persons, fell upon the constables; that this affray continued an hour after, till in the end one of the constables, viz. the said John Cooper, was slain; but by whose hand it did not appear. It also appeared that A. had been tried on this indictment and acquitted. * * * Though the indictment be against the prisoner for aiding, assisting, and abetting A. who was acquitted; yet the indictment and trial of this prisoner is well enough, for who actually did the murder is not material; the matter is, that a murder was committed, and the other is but a circumstance, and all are principals in this case; therefore, if a murder be proved, it is well enough."

■ Under § 550, supra, an aider and abettor may be charged directly with the commission of the crime and the charge may be supported by proof that he aided and abetted in its commission.[7]

State v. Smith, 100 Iowa 1, 69 N.W. 269; State v. Anderson, 89 Mo. 312, 1 S.W. 135, 142; Boyd v. State, 17 Ga. 194, 196.

[3] Rooney v. United States, 9 Cir., 203 F. 928, 933; Kelly v. United States, 6 Cir., 258 F. 392, 402; Regina v. Wallis, 91 Eng.Rep.R. 294; King v. Taylor and Shaw, 168 Eng.Rep.R. 283; Brown v. State, 28 Ga. 199, 217; Skipper v. State, 150 Fla. 259, 7 So.2d 128, 129, 130; State v. Wilson, 235 Iowa 538, 17 N.W.2d 138, 140; Id., Iowa, 19 N.W.2d 232, 239; Christie v. Commonwealth, 193 Ky. 799, 237 S.W. 660, 661, 24 A.L.R. 599; Smith v. Commonwealth, 216 Ky. 813, 288 S.W. 752, 753; Bruce v. Smith, 99 Ga. 50, 25 S.E. 760, 761; Montague v. State, 17 Fla. 662, 665; Goins v. State, 46 Ohio St. 457, 21 N.E. 476, 478; People v. Kief, 126 N.Y. 661, 27 N.E. 556, 557; State v. Martino, 27 N.M. 1, 192 P. 507, 509; Note, 24 A.L.R. p. 603; Note, 8 Ann.Cas. 439; United States v. Hartwell, 26 Fed.Cas.No.15318, pp. 196, 199.

[4] State v. Smith, 100 Iowa 1, 69 N.W. 269; Hornsby v. State, 29 Ohio App. 495, 163 N.E. 923, 924; Hanoff v. State, 37 Ohio St. 178, 184, 41 Am.Rep. 496; Noland v. State, 19 Ohio 131, 132.

[5] Goucher v. State, 113 Neb. 352, 204 N.W. 967, 968, 41 A.L.R. 227.

[6] Regina v. Wallis, 91 Eng.Rep.R. 294; Spies v. People (The Anarchists Case), 122 Ill. 1, 12 N.E. 865, 912, 17 N.E. 898, 3 Am.St.Rep. 320; Howard v. Commonwealth, 110 Ky. 356, 61 S.W. 756, 757, 758.

[7] Jin Fuey Moy v. United States, 254 U.S. 189, 192, 41 S.Ct. 98, 65 L.Ed. 214; Greenberg v. United States, 8 Cir., 297 F. 45, 48; Harris v. United States, 2 Cir., 273 F. 785, 790; Di Preta v. United States, 2 Cir., 270 F. 73, 75; Kelly v. United States, 6 Cir., 258 F. 392, 402; Vane v. United States, 9 Cir., 254 F. 32, 33, 34; Wood v. United States, 4 Cir., 204 F. 55, 58; Colbeck v. United States, 7 Cir., 10 F.2d 401, 403; Madigan v. United States, 8 Cir., 23 F.2d 180, 181; Collins v. United States, 8 Cir., 20 F.2d 574, 578; Rosencranz v. United States, 9 Cir., 155 F. 38, 41, 43. See, also, Regina v. Manning, 175 Eng.Rep. R. 372, 380, construing a similar English statute; and People v. Bliven, 112 N.Y. 79, 19 N.E. 638, 639–645, 8 Am.St.Rep. 701; Spies v. People (The Anarchists Case), 122 Ill. 1, 12 N.E. 865, 912, 17 N.E. 898, 3 Am.St.Rep. 320; Chambers v. State, 194 Ga. 773, 22 S.E. 2d 487, 489–492; People v. Outeveras, 48 Cal. 19, 21–26, construing similar state statutes.

█ The transportation of the intoxicating liquor from Dallas, Texas, to the point beyond Moore, Oklahoma, where the International Truck was seized, was a single transportation. Throughout the journey, the movement retained the character of interstate commerce. It continued to be a single transportation into Oklahoma. It, therefore, was a continuing offense.[8] But where the transportation of intoxicating liquor into a state, in which all sales of intoxicating liquor are prohibited, reaches its intended destination in such state, or where the transportation otherwise ceases, and the intoxicating liquor comes to rest in such state, the offense is no longer a continuing one, and a subsequent transportation thereof within the state is not a transportation into such state.[9] Counsel for appellants rely on Morgan v. United States, 10 Cir., 159 F.2d 85. What was said in the opinion in that case must be read in the light of the particular facts there presented. In the Morgan case, investigators for the Alcohol Tax Unit observed Morgan driving an automobile a short distance south of Lawton, Oklahoma, traveling toward that city. They stopped Morgan and found 20 cases of whiskey in the automobile. Morgan admitted the whiskey came from Fort Worth, Texas, but refused to admit that he transported it from Fort Worth into Oklahoma. There was no proof of the actual transportation from Texas into Oklahoma, except what might be inferred from the fact that the whiskey was found in Oklahoma and originated in Texas. There was a total absence of proof that the transportation by Morgan was a part of the transportation from Fort Worth into Oklahoma. For aught that appears, the transportation into Oklahoma may have been completed and the whiskey come to rest in Oklahoma before it was transported in Oklahoma by Morgan.

█ In the instant case, there was proof that the whiskey seized was transported in the International truck from Dallas, Texas, to a point beyond Moore, Oklahoma; that the truck was driven from Davis to Moore, Oklahoma, by Evans, and from Moore to the point of seizure by either Evans or Feezell. The proof did not establish the identity of the driver of the International truck from Dallas to Davis. The movement from Davis to the point beyond Moore, where the International truck was seized, was a part of a single continuous transportation from Dallas to the point of seizure, and warranted the court in finding that there was an unlawful transportation into Oklahoma by some one, and that Evans and Feezell assisted in that transportation. On the facts, we think the instant case is distinguishable from the Morgan case.

There was also proof that Von Patzoll transported Brandon from the Liquor Store to the Leeway Parking Lot in his Buick coupe; that Brandon drove the International truck from the Leeway Parking Lot to the filling station in Dallas; that the whiskey was loaded into the International truck from the Buick sedanette; that Von Patzoll also transported Feezell from some point south of Moore to Moore, Oklahoma, and there conferred with Brandon, Feezell, and Evans, the latter having arrived at Moore in the Buick truck. There can be no doubt, under the evidence, that Von Patzoll and Brandon were interested in the transportation. It warranted the court in finding that Von Patzoll and Brandon induced or procured Feezell and Evans to assist in the unlawful transportation, and adjudging them guilty as principals.

█ The facts within the knowledge of the investigators, and of which they had reasonable trustworthy information, were sufficient to lead a reasonably discreet and prudent man to believe that intoxicating liquor was being transported in the International truck into Oklahoma. It was not practical for the investigators to obtain a search warrant. The search and seizure was, therefore, lawful.[10]

[8] McBoyle v. United States, 10 Cir., 43 F.2d 273, 275 (reversed on another ground, 283 U.S. 25, 51 S.Ct. 340, 75 L. Ed. 816).

[9] See Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202, 207.

[10] Jenkins v. United States, 10 Cir., 161 F.2d 99; Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790; Husty v. United States, 282 U.S. 694, 701, 51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407. Cf. Hart v. United States, 10 Cir., 162 F. 2d 74.

Section 223, supra, became applicable with respect to importation into Oklahoma on the enactment of 37 Okl.St.Ann. §§ 41 to 48, inclusive, in 1939.[11] The Legislature of Oklahoma, at its 1947 session, enacted House Bill No. 254, 37 O.S.Supp. § 163.1 et seq. It carried the emergency clause and, therefore, became effective on April 24, 1947, the date of its approval. Section 22 of the latter Act in part provided: "37 O.S.1941 §§ 41, 42, 43, 44, 45, 46, 47, and 48, are hereby repealed." Laws 1947, p. 296.

■ Here, the defendants were charged and convicted under a Federal law which is still in force and effect. It is true that the existence of the requisite prohibitory laws of Oklahoma is a factual ingredient of the Federal offense with respect to importations into Oklahoma, but that factual ingredient existed when the offense was committed. The repeal of 37 O.S.1941 §§ 41 to 48, inclusive, in nowise repealed the Federal statute. It merely brought to an end a continuing fact which is an essential factual element of the Federal offense. Since the facts essential to the Federal offense were present at the time that offense was committed, the subsequent repeal of the Oklahoma statute does not bar the Federal prosecution. United States v. Chambers, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510, is distinguishable. It involved a prosecution under the National Prohibition Act, 27 U.S.C.A. § 1 et seq. The court held that pending prosecutions under the National Prohibition Act could not be maintained after the effective date of the Twenty-first Amendment of the Constitution of the United States, because the National Prohibition Act, to the extent that its provisions rested upon the grant of authority to the Congress by the Eighteenth Amendment, immediately fell with the withdrawal by the people of the essential constitutional support. Here, the Federal Act remains in full force and effect. We hold that prosecutions, under the Federal statute, may be maintained for offenses committed while the requisite Oklahoma prohibitory laws were in effect.

Affirmed.

BRATTON, Circuit Judge (dissenting).

The first count in the information charged that appellants transported approximately 29 cases of intoxicating liquor from Texas into Oklahoma, a dry state; and the second count charged that they assisted in such transportation. Tried before the court without a jury, appellants were acquitted on the first count and found guilty on the second. I think the facts and circumstances established at the trial show beyond a reasonable doubt that appellants, acting together and in concert as principals, transported the liquor. I am unable to find in the record any sustainable basis for the conclusion that some other person actually transported the liquor and that appellants merely assisted him in doing so.

We held quite recently in a case which seems to be indistinguishably similar to this one that evidence of that kind is not sufficient to support a charge of assisting in the transportation of liquor. Morgan v. United States, 10 Cir., 159 F.2d 85. On the authority of that case, I think the judgment should be reversed.

---

[11] Tucker v. United States, 10 Cir., 123 F.2d 280. Cf. Dunn v. United States, 10 Cir., 98 F.2d 119, 117 A.L. R. 1302.