OPINION
This appeal is taken by Defendant-Appellant Marlon L. Collins from the judgment entered by the Court of Common Pleas of Allen County convicting him of two counts of felonious assault and sentencing him to 19 years with the Ohio Department of Rehabilitation and Corrections.
Terrence Andrew, a current resident of Indianapolis, Indiana, visited Lima, Ohio on May 29, 1999 in order to celebrate the twenty-second birthday of his brother, Shaiton Andrews. On the evening of the 29th, Terrence and Shaiton began the celebration at his cousin's house. There were many guests in attendance.[1]
Around 1 a.m. the party and most of those in attendance moved to Club 2000 to continue the festivities. The club closed around 2 a.m. and the large crowd celebrating Shaiton's birthday left together and walked to the parking lot attached to the Vine Street Mini Mart, also known as Ann's Barbecue. Once in the parking lot the spirited discussions and celebration continued.
While the party in the parking lot continued at a frenzied pace Terrence noticed Marlon Collins parked in his white Cadillac on the street next to the Mini Mart parking lot. Several feet in front of Collins' Cadillac, Terrence sat on the hood of another car talking with several people. During this conversation Terrence noticed that Collins was staring at him in an "aggressive" manner.
Testimony of key witnesses conflicted concerning exactly what transpired next. Terrence Andrews testified that he became curious about why Collins was staring at him in such a manner and asked, "Why are you staring at me like that? What's your problem, man? You got a problem?" Collins reportedly responded, "I'll show you the problem." At that point Terrence testified that Collins got out of the Cadillac, pulled a slate gray gun from behind his back and started shooting. Terrence stated that upon seeing the gun he turned to run but was stopped when hit by bullets through his back.
Collins version of the events is somewhat different. He testified as follows:
 "I was sitting in my car and I noticed people taking pictures and so I'm looking in that direction and watching them take pictures. The next thing I know Terrence Andrews walks * * * well, he states something from where he is first. He's like, `What's up man?' I didn't say nothing. So, he started walking towards my car and he asked me, `What the fuck are you looking at? Why do you keep looking at me like that? You must got a problem with me or something.' So, while he's walking towards my car I get scared and so I get out. I step outside my car and he's walking towards me with his hand by his belt. * * * He was walking with his right hand in his belt. I noticed a firearm when he get close to me. He sees that I noticed it and he pulled it. So I go towards him. I lunge at him and we're fighting for this gun and the gun is going off. It just keeps going off. The gun doesn't stop going off. We're just fight for this gun. I see he retreats and so I retreated and ran to my car and I took off. I went home."
 Terrence Andrews was rushed to the hospital where several bullets were removed from his body. His lower left elbow has been rendered nearly useless because one of the bullets entered through the back of his elbow and exited through the front severing nearly every nerve in his lower left arm. Shaiton suffered only a flesh wound and was also treated at the hospital.
Collins turned himself in the next day at the Lima Police Department. On July 15, 1999, Collins was indicted on two counts of felonious assault, felonies in the second degree in violation of R.C. 2903.11(A)(2). Each count of the indictment also contained a firearm specification pursuant to R.C. 2941.45. The jury trial commenced on September 21, 1999. At the conclusion of testimony while the jury was on noon recess the court instructed counsel that it wished to discuss the proposed jury instructions. Earlier defense counsel had requested an instruction on both self-defense and accident. The court indicated that it would indeed be giving an instruction on self-defense but further it stated:
 You requested an instruction on `accident'. It's my understanding that that is with regards to Shaiton. As the court stated when ruling on the 29 motion, it was not going to give the instruction on accident. The court wants to restate for the record the reasons therefore. First of all, the defendant is not entitled to an instruction on both self-defense and accident. That was first decided in State v. Champion, 109 Ohio St. 281. In fact, I like the language in that case where, "the defendant has the right to one request or the other, but by no manner or logic, law or legerdemain is he entitled to both." * * * The reason they say that is because they are inconsistent definitions. So you can't have both. That is crystal clear in this court's mind. The Third District Court of Appeals, again has decided that in Bucyrus v. Fawley, 50 Ohio App.3d 25. * * * Self-defense is an intentional action and accident cannot be intentional.
 The jury was charged and on September 23, 1999 returned a guilty verdict on both counts including the firearm specification. The trial court proceeded to sentence the defendant to eight years on each count, to be served consecutively, as well as to an additional 3-year consecutive term for the firearm specification. On appeal from that judgment and sentencing Collins presents the following two assignments of error:
 The trial court committed an error of law by failing to instruct the jury on accident.
 The trial court committed an error of law by imposing maximum consecutive sentences.
In his first assignment of error Collins asserts that although the trial court correctly set forth the legal theories the court erroneously instructed on transferred intent and self-defense for he claims the facts and evidence produced at trial established accident not self-defense. Careful analysis and review of the record establish unequivocally, that counsel for Collins requested an instruction on self-defense. Moreover, when the instruction on self-defense was given counsel for Collins did not object.[2]
Therefore, if any error exists it was invited. It is well settled that "a party will not be permitted to take advantage of an error which he, himself, invited or induced the court to make."State ex rel., Soukup v. Celebreeze, Judge (1998),83 Ohio St.3d 549, 550.
In addition, the record discloses that all evidence relevant to Collins' defense presented at trial supported an instruction of self-defense. His own testimony described Terrence as the aggressor and himself as a defender. It must be remembered that "a court may refuse to give an instruction as to a matter which is not applicable to the facts governing the case." State v. Williams
(1991), 75 Ohio App.3d 102, 116 citing State v. Scott (1986)26 Ohio St.3d 92, 497 N.E.2d 55 (Habeas Corpus granted in part) relying on Romeo v. State (1931), 39 Ohio App. 309, 177 N.E. 483. Therefore, no error having been shown, Collins' first assignment of error is overruled.
In his second assignment of error Collins' claims that the trial court erred when it sentenced him to maximum sentences and ordered that they be served consecutively. Collins advances several theories as to why the trial court erred when it sentenced him as it did. Initially he claims that maximum consecutive sentences were not necessary to satisfy the underlying purposes and principles of felony sentencing pursuant to R.C. 2929.11. Second, he contends that he did not commit the worst form of the offense nor does he pose the greatest likelihood of committing future crimes. Finally, Collins argues that the trial court could have protected the public and punished him without imposing consecutive sentences.
When a sentence is appealed under current Ohio sentencing laws, the appellate court may remand the case, or increase, reduce, or otherwise modify the sentence, if it clearly and convincingly finds that the record does not support the sentence. R.C.2953.08(G)(1)(a).
The guidelines and mandates the trial court follows when sentencing an offender are contained within O.R.C. Chapter 2929. The purposes and principles of felony sentencing set forth in R.C.2929.11 are:
 * * * to protect the public from future crime by the offender and others and to punish the offender.
O.R.C. 2929.12 sets forth a list of several factors that are to be considered by the trial court during sentencing proceedings. If the offender has not previously served a prison term the court must impose the shortest sentence unless the court establishes on the record that the shortest prison term "will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." O.R.C. 2929.14(B). The court may impose the maximum sentence when:
 * * * [T]he court imposing a sentence for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section. O.R.C. 2929.14(C)
When imposing consecutive sentences, R.C. 2929.14(E)(4) provides:
 If multiple prison terms are imposed on an offender for convictions, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes by the offender.
The judgment and sentencing entry issued by the trial court in this case follow the sentencing guidelines outlined above with meticulous precision. Moreover, after thorough review of the record this court cannot say that the 19 year prison term is not supported by clear and convincing evidence. As a result, no error having been shown Collins' second assignment of error is overruled and the judgment of the Court of Common Pleas of Allen County is affirmed.
Judgment affirmed.
BRYANT, J.
WALTERS and HADLEY, JJ., concur.
[1] Testimony of the number of guests varied. It ranged anywhere from 50 people to 200 people.
[2] The transcript reveals that counsel for Collins objected to the refusal of the trial court to give an instruction on accident in addition to an instruction on self-defense. The State did object to the self-defense instruction, but counsel for Collins remained silent.