[Cite as *State v. Leech*, 2015-Ohio-76.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-13-1156

      Appellee                              Trial Court No. CR0201301395

v.

Terrell Leech                                    **DECISION AND JUDGMENT**

      Appellant                            Decided:  January 9, 2015

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
David F. Cooper, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the

Lucas County Court of Common Pleas after a jury found defendant-appellant, Terrell

Leech, guilty of one count of felonious assault with a firearm specification, a second degree felony. Appellant now challenges that judgment through the following assignments of error:

1) The trial court erred by allowing the state to present evidence of appellant's prior bad acts.

2) The trial court erred when it instructed the jury on complicity.

3) Appellant received ineffective assistance of counsel at trial.

4) Appellant's conviction fell against the manifest weight of the evidence.

5) The cumulative effect of the errors committed at trial prevented appellant from receiving a fair trial.

{¶ 2} Appellant was indicted on March 12, 2013, and charged with one count of aggravated robbery and one count of felonious assault with a firearm specification. Appellant pled not guilty to the charges and the case proceeded to trial at which the following evidence was presented.

{¶ 3} On March 2, 2013, appellant telephoned Jason Yates and asked him to buy a bottle of Hennessy liquor and bring it to his apartment. Yates bought the bottle and then went to appellant's apartment in the Weiler Homes on Leach Street, in Toledo, Ohio, with his girlfriend, Tamikka Allen. Appellant was there with his girlfriend, Myesha Page. Yates testified that at some point after they arrived, appellant told them of an altercation he had in a bar the previous night. Appellant then pulled out an eyebrow

2.

trimmer that had a razor on the end and said he wished he had had it with him at the bar. Yates testified that appellant then pulled out a gun, at which point Page grabbed Allen's purse and dumped its contents on the floor. When Allen began screaming, appellant hit her in the face with the gun. Yates stated that in addition to appellant and Page, a large woman was in the apartment, blocking the exit. As the altercation began, appellant told this woman not to let Yates and Allen leave. Yates then approached appellant, who pointed the gun at Yates and said "I should shoot you in the face." Yates testified that when appellant first pulled the trigger, the gun did not discharge. Appellant then "messed" with the gun, pulled the trigger a second time and shot Yates in the shoulder. Yates stated that he did not initially realize he had been shot, but also stated that he was somewhat in shock. At that point, Allen ran out of the apartment and Yates quickly followed. When they reached their car, Yates tried to open the door but could not. He then realized he had been shot. Yates and Allen quickly drove away and Allen called 911.

{¶ 4} The recording from the 911 call was played for the jury. Although the recording is difficult to hear clearly, Tamikka Allen testified at the trial and identified her voice on the recording. On the recording, Allen is hysterical, reports that Yates has been shot and identifies appellant as the shooter. Eventually, Allen drove to a parking lot by a Walgreen's drug store, where she and Yates met up with officers from the Toledo Police Department. Officer Donald Bryan was the first officer on the scene. As he approached Yates, Yates said "my dude shot me, Terrell Leech shot me." He then gave Bryan

3.

appellant's address.  Yates was subsequently taken to the hospital where he was treated for a gunshot wound, but Allen remained in the parking lot and was questioned by officers.  She gave officers her account of what transpired at the Leach Street address and again identified appellant as having shot Yates.  Both Yates and Allen identified appellant in court as the person who shot Yates.

{¶ 5} After learning appellant's name and address, officers from the Toledo Police Department went to the Leach Street apartment to investigate and to search for a weapon. Detective Jeff Quigley spoke with appellant and Page at the apartment.  Quigley testified that appellant told him that he and Yates got into an argument, that Yates cut him with an eyebrow trimmer, that in self-defense, he grabbed a lamp, and that after Yates ran out of the apartment, he heard a gunshot.  Photographs of the apartment that had been taken during the investigation were admitted into evidence.  The photographs show the condition of the apartment as it was on March 2, 2013: a lamp laying on the floor, an eyebrow trimmer on the floor, and drops of blood on the stairs leading to the bathroom. Other photographs depict the contents of the spilled purse, including Allen's credit cards, and the bottle of Hennessy liquor.

{¶ 6} Appellant was subsequently taken to the police station where he was questioned by Detective Gregory Mattimore.  Prior to the interview, appellant was notified of his constitutional rights under *Miranda*, and he signed a waiver of those rights. A video recording of that interview was played for the jury, during which the state redacted portions of the recording in which appellant discussed time he had spent in

4.

prison. During that interview, appellant stated that Tamikka Allen was involved in a tax fraud scheme in which she had obtained information about him and his relatives and used that information to file false tax returns. He and Page, therefore, planned to lure Yates and Allen to the apartment, and then call the police. Appellant stated, however, that he and Yates got into a scuffle, during which Yates cut him with an eyebrow trimmer. Appellant denied shooting Yates and told Mattimore that he heard gunshots after Yates fled the apartment. In addition, appellant made the following statements that were not redacted from the portion of the recording that was played for the jury:

> If I had a gun you think I woulda call y'all? Hold him at gunpoint? Weapons under disability? You think I'd a done that? I didn't shoot that n****r. * * * I done shot at somebody before. * * * You think I'm gonna do it again? I'm almost 40, I'm not going to jail for stupid s**t. I can't afford to go lay it down for 20 years.

{¶ 7} In his testimony at the trial below, Detective Mattimore stated that Allen's credit cards were found in the apartment, that no evidence was ever found to support appellant's contention that Allen was involved in a tax fraud scheme, and that no gun was ever found at the scene.

{¶ 8} At the conclusion of the state's case, the state moved to admit its exhibits, including Exhibit 16(A), which was the redacted version of the video recording of appellant's interview. Appellant's counsel objected to the state's failure to redact the

5.

portion of the recording in which appellant discussed his involvement with a prior shooting. The court overruled the objection.

{¶ 9} Appellant then attempted to put on a defense, but the witness he subpoenaed, a Charlene Hughes, did not appear. Appellant's counsel then requested that the court issue a material witness warrant. Upon questioning by the court, appellant's counsel revealed that although a subpoena had been delivered to Hughes' address the previous day, personal service on Hughes had not been obtained. The court concluded that the requirements for a material witness warrant had not been met and denied the request. The court did, however, allow appellant's counsel to proffer Hughes' testimony based on a statement she gave to a Detective Johnson, who did not testify at trial. Counsel proffered that Hughes would have testified that she saw Yates stab appellant and that she never saw a gun or heard gunshots. Appellant's counsel, however, never personally spoke to Hughes and obtained the proffered information from a police report. The state then read into the record information from a supplemental police report regarding Hughes' statement to police. Hughes told police that she was in the apartment during the entire incident, that appellant, Page, Yates and Allen were arguing about money, and from the argument Hughes surmised that Allen had stolen money from Page. Appellant and Yates then began to fight and Page dumped Allen's purse on the couch. During the fight, Yates pulled out an eyebrow trimmer and stabbed appellant in the arm, at which point, Page called the police. Hughes never saw a gun or heard gunshots.

6.

{¶ 10} Following the Hughes proffer, appellant's counsel rested. The jury subsequently returned verdicts of not guilty on the aggravated robbery charge and guilty on the felonious assault charge. The jury further found that appellant had a firearm on or about his person or under his control while committing felonious assault. Appellant was sentenced to six years in prison on the felonious assault charge and a mandatory and consecutive term of three years on the firearm specification, for a total prison sentence of nine years.

{¶ 11} In his first assignment of error, appellant challenges the lower court's evidentiary ruling on Exhibit 16(A). Appellant contends that the lower court erred in refusing to further redact the videotape recording of appellant's interrogation so as to exclude his admission to being involved in a prior shooting and his weapon under disability comment. These comments, appellant asserts, were inadmissible as evidence of other crimes, wrongs or bad acts.

{¶ 12} The record reveals that during Tamikka Allen's testimony, the state was about to play the audio recording of the 911 call for the jury. Appellant's counsel thought the video recording of appellant's interview was about to be played and asked to approach the bench. He then informed the court that he was objecting to the part toward the end of the video where appellant admits to a shooting about 20 years ago. The state responded: "Right, we've got it taken care of." Subsequently, during Detective Mattimore's testimony, the video of appellant's interview was played for the jury and appellant's comments regarding the earlier shooting were not redacted. Appellant's

7.

counsel did not object at that time, but he did object when the state moved to admit the video as evidence. Accordingly, we will review this issue under the abuse of discretion standard rather than the plain error standard promoted by the state.

{¶ 13} It is well-settled that the admission or exclusion of evidence lies within the sound discretion of the trial judge, and will not be disturbed on appeal absent a finding of an abuse of that discretion. *State v. Dupuis*, 6th Dist. Lucas No. L-12-1035, 2013-Ohio-2128, ¶ 46. An abuse of discretion is demonstrated where the trial court's attitude in reaching its decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 14} Evidence of other acts which are wholly independent of the crime charged is generally inadmissible. *State v. Thompson*, 66 Ohio St.2d 496, 497, 433 N.E.2d 855 (1981). In that vein, Evid.R. 404(B) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Accordingly, evidence of other crimes committed by the accused either before or after the crime charged is inadmissible to show a propensity to commit crimes, but may be relevant and admissible to show motive or intent, the absence of mistake or accident, or a scheme, plan or system in committing the act in question. *State v. Broom*, 40 Ohio St.3d

8.

277, 533 N.E.2d 682 (1988), paragraph one of the syllabus. Further, the other act must not be too remote and must be closely related in time and nature to the offense charged. *State v. Burson*, 38 Ohio St.2d 157, 159, 311 N.E.2d 526 (1974). If the act is too distant in time or too removed in method or type, it has no probative value. *State v. Henderson*, 76 Ohio App.3d 290, 294, 601 N.E.2d 596 (12th Dist.1991).

{¶ 15} Following appellant's objection to the admission of his statements regarding his prior use of a weapon, the state countered that because it was a statement appellant chose to make to the detective during the interview, it did not fall within the limits of Evid.R. 404(B). The court, without explanation, allowed the statement to remain.

{¶ 16} In reviewing an objection made pursuant to Evid.R. 404(B), the Supreme Court of Ohio has directed trial courts to conduct a three-step analysis:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value

of the other acts evidence is substantially outweighed by the danger of unfair prejudice. Evid.R. 401. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

{¶ 17} In reviewing appellant's statements that he had previously shot at someone and would not have done so again because he would not risk a weapon under disability charge and a lengthy prison sentence, we find that there is no evidentiary value in this statement relevant to the issues the jury was asked to consider. That is, the fact that appellant previously shot at someone with a gun is not relevant to whether he committed felonious assault with a firearm specification and aggravated robbery in this instance.

{¶ 18} Next, we must determine if the evidence was presented to prove the character of appellant in order to show that he acted in conformity therewith or whether the evidence was presented to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Given that the state redacted earlier portions of the videotaped interview in which appellant discussed his recent incarceration, it is not clear why the state did not also redact the statements under review here. Moreover, the state did not articulate, and the court did not find, for what legitimate purpose the evidence was being admitted. In its brief before this court, the state contends that the evidence was admissible because the *defendant* introduced it to prove his lack of intent. The record does not support this contention. The videotaped interview was evidence that the state admitted in evidence against appellant, and appellant's statements

10.

regarding his involvement in a prior shooting were not relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 19} Finding that appellant's statements regarding his involvement in an earlier shooting had no probative value, we find that the lower court erred in refusing to redact them from the video recording. Nevertheless, upon a thorough review of the record, we find that the admission of these statements amounted to harmless error given the overwhelming evidence of appellant's guilt. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 88. Accordingly, the first assignment of error is not well-taken.

{¶ 20} In his second assignment of error, appellant asserts that the lower court erred in placing the complicity instruction immediately after the instruction on felonious assault, rather than after the instruction on aggravated robbery. Appellant does not challenge the instruction itself, only the court's placement of the instruction.

{¶ 21} After the state completed its presentation of the evidence to the jury and moved to admit its exhibits, it requested that the jury be instructed on complicity given the evidence that appellant and Page acted together with respect to the theft offense. Appellant's counsel objected to the inclusion of the instruction, which the court overruled. In instructing the jury, the court first instructed on aggravated robbery, then

11.

instructed on felonious assault, and immediately followed that with the instruction on complicity. Appellant's counsel did not object to the placement of the instruction or request any clarification as to its applicability.

{¶ 22} Crim.R. 30(A) provides in relevant part: "On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the ground for the objection." Because appellant did not object to the placement of the instruction at the trial, he has waived all but plain error. *State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), syllabus. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, "the outcome of the trial clearly would have been otherwise." *Id.* at paragraph two of the syllabus.

{¶ 23} A single jury instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *State v. Price,* 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph four of the syllabus. Upon review of the entire charge to the jury, we cannot say that the outcome of the trial would have been otherwise had the court inserted the complicity instruction immediately after the instruction on aggravated robbery. There was overwhelming evidence presented that appellant was the principal

12.

offender of the felonious assault. Accordingly, any suggestion that the outcome of the trial would have been otherwise by the placement of the complicity instruction is erroneous. The second assignment of error is not well-taken.

{¶ 24} In his third assignment of error, appellant asserts that he was denied the effective assistance of counsel at the trial below.

{¶ 25} In order to establish ineffective assistance of counsel, an accused must show: (1) that his trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment of the United States Constitution, and (2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is shown where there is a reasonable probability that a different result would have occurred in the case if the attorney had not erred. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. This burden of proof is high given Ohio's presumption that a properly licensed attorney is competent. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988). Issues which are arguably a matter of counsel's trial tactics and strategies do not constitute ineffective assistance. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980), citing *State v. Lytle*, 48 Ohio St.2d 391, 396, 358 N.E.2d 623 (1976).

{¶ 26} Appellant asserts that his trial counsel was ineffective in failing to object to the inadmissible bad acts evidence addressed under the first assignment of error at the time the video recording was played for the jury and in failing to request a limiting

13.

instruction regarding that evidence, was ineffective in failing to object to the placement of the jury instruction on complicity, and was ineffective in failing to procure Charlene Hughes as a witness for the defense.

{¶ 27} Given our rulings under the first and second assignments of error, we cannot find that counsel's representation regarding the bad acts and complicity instruction issues amounted to ineffective assistance of counsel.

{¶ 28} Regarding trial counsel's failure to procure Charlene Hughes as a witness for the defense, the record reveals that on May 17, 2013, appellant's trial counsel requested a subpoena be issued for Hughes. The Lucas County Sheriff then served that subpoena at Hughes' residence on May 20, 2013. When she failed to show at the trial, counsel requested a material witness warrant, which the court properly denied. Counsel and the state then proffered Hughes' likely testimony based on the statement she had previously given to police.

{¶ 29} The decision whether to call a witness is "'within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 125, quoting *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). While the decision to call or not to call a witness might be debatable, it does not constitute ineffective assistance of counsel. *State v. Martin*, 2d Dist. Montgomery No. 20610, 2005-Ohio-1369, ¶ 19. Appellant asserts that his trial counsel should have requested a continuance in order to procure Hughes' testimony.

14.

Counsel's decision to continue with the trial rather than seek a continuance, however, falls within the ambit of trial strategy, as Hughes' testimony may have been beneficial to the state's aggravated robbery charge.

{¶ 30} We therefore conclude that trial counsel was not ineffective in his representation of appellant and the third assignment of error is not well-taken.

{¶ 31} In his fourth assignment of error, appellant asserts that his conviction for felonious assault was against the manifest weight of the evidence.

{¶ 32} A manifest weight of the evidence challenge questions whether the state has met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In making this determination, the court of appeals sits as a "thirteenth juror," and:

> 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 33} Appellant was convicted of felonious assault with a firearm specification in violation of R.C. 2903.11(A)(2), which states:

15.

(A)  No person shall knowingly do either of the following:

* * *

(2)  Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶ 34} In support of this assignment of error, appellant points to inconsistencies in the testimony of various witnesses and concludes that the state's evidence in this case is not credible.  We have thoroughly reviewed all of the evidence and testimony in this case and cannot say that the jury clearly lost its way and created a manifest miscarriage of justice.  Both Yates and Allen made statements immediately after the shooting that identified appellant as the shooter.  Allen first identified appellant as the shooter in her 911 call immediately after leaving the apartment building and while in a highly emotional state.  Yates' first statement to officers in the Walgreen's parking lot identified appellant as the shooter.  The jury heard the testimony of both of these witnesses, as well as the officers who investigated this case.  The evidence did not weigh heavily against the conviction.  Accordingly, the fourth assignment of error is not well-taken.

{¶ 35} Finally, in his fifth assignment of error, appellant contends if we find the above errors were harmless, the cumulative effect of these harmless errors deprived appellant of a fair trial.  Given our rulings on the four assignments of error addressed above, we find no merit in this argument.  The fifth assignment of error is not well-taken.

16.

**{¶ 36}** On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.            _____
                                                              JUDGE
Thomas J. Osowik, J.

                                              _____
Stephen A. Yarbrough, P.J.                JUDGE
CONCUR.

                                              _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.