[Cite as *State v. Hayes*, 2018-Ohio-3608.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 18 CAA 02 0015 |
| MARK G. HAYES | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No.  17 CRI 07 0446


JUDGMENT:                             Affirmed


DATE OF JUDGMENT ENTRY:      September 6, 2018


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

CAROL HAMILTON O'BRIEN            APRIL F. CAMPBELL
PROSECUTING ATTORNEY             CAMPBELL LAW, LLC
CORY J. GOE                              545 Metro Plaza South
ASSISTANT PROSECUTOR             Suite100
140 North Sandusky Street, 3rd Floor     Dublin, Ohio  43017
Delaware, Ohio  43015

*Wise, John, P. J.*

{¶1}   Defendant-Appellant Mark G. Hayes appeals his convictions on two counts of robbery following a jury trial in the Delaware County Court of Common Pleas.

*Facts and procedural History*

{¶2}   On July 21, 2017, Appellant Hayes was indicted on one count of Kidnapping, in violation of R.C. §2905.01(A)(2), a felony of the first degree; one count of Robbery, in violation of R.C. §2911.02(A)(2), a felony of the second degree; and, one count of Robbery, in violation of R.C. §2911.02(A)(3), a felony of the third degree.

{¶3}   On January 30, 2018, a jury trial commenced in this matter. Prior to the commencement of the trial, the State dismissed the kidnapping charge.

{¶4}   At trial, the jury heard testimony from two witnesses; Giezi Vazquez Morales, the victim in this case, and Detective David Leighty.

{¶5}   Giezi Morales testified than on June 6, 2017, he left work to get lunch at a nearby Chipotle restaurant in Westerville, Ohio. (T. at 109). As he was about to enter the restaurant he was approached by a man he did not know, Appellant Mark Hayes, who asked him to help jump start his car. (T. at 110-111). Mr. Morales retrieved the jumper cables from the trunk of his car and asked Appellant where his car was. (T. at 111). Appellant told him his car was at Costco. *Id*. Morales, who was unfamiliar with the area, said he did not know how close Costco was to Chipotle. (T. at 111-112).  Morales also testified that Appellant asked him "do you want a phone, a PS4" and he replied "no, I'm okay. I'm just trying to help you out real quick because I'm on break." (T. at 111, 113). Morales recalled that he and Appellant got into his car and Appellant began directing him to Costco. (T. at 112-113).  Morales stated that at first the two men engaged in polite

conversation, but then Appellant "pulled back like he had a weapon or something and he told me to give him my money." (T. at 114-115). Morales explained that Appellant put his hand under his shirt, or hid his hand under his shirt, and that he believed Appellant had a gun. (T. at 115). He stated that Appellant told him if he "did anything he was gonna hurt me." (T. at 115). He recalled that Appellant was loud, was yelling at him and acting very aggressively. *Id.* He told Appellant that he did not carry any cash. (T. at 115-116). He stated that Appellant told him to make a U-turn and go to the ATM at Chase Bank, which he had told Appellant was his bank. (T. at 115). Morales recalled that he initially had trouble recalling his PIN, but that eventually he successfully withdrew $300. (T. at 120-124). Morales then placed the money in his wallet, put his wallet in his pocket and drove away from the bank toward Costco. (T. at 125). During the 5 to 10 minute drive to Costco, Appellant continued to tell Morales that he would hurt him if he did anything. (T. at 125). Morales said Appellant was very serious and straight-forward, and that he was scared so he did not try anything. (T. at 125-126). Morales testified that when they arrived at Costco, Appellant directed him to pull behind the store to the loading area. (T. at 126). He recalled that there was not anyone else around. *Id.* He testified that Appellant then put the car in park and took Morales' keys from the ignition. (T. at 126). He stated that Appellant then went over near the loading docks for about a minute, and then returned to the car. (T. at 127). He said Appellant got back in the car and started trying to take Morales' wallet from him, which was in his back pocket. (T. at 127). He explained Appellant "kept sticking his hands in my pocket, and he finally got it out, and we were tugging back and forth, like fighting, trying to get my wallet. During that tug and pull, like, my nail broke, so it was like bleeding." (T. at 127). While they were fighting over the wallet, Appellant told him "let it

go. I'm gonna hurt you. Let it go." (T. at 128). He recalled that Appellant then exited the passenger side of the car and came around to the driver's side, opened the door and continued to try to take the wallet. (T. at 128-129). At some point during the struggle for the wallet, Morales got out of the vehicle. (T. at 129). Morales testified that he managed to snatch his wallet and car keys back from Appellant and then ran back to his car. (T. at 129-130). He stated that Appellant ran back to the car also and was able to get back in on the passenger side because the door was still open. (T. at 130). At that time, Morales, who had his phone in his hand, told Appellant that he was going to call police if Appellant did not get out of his car. (T. at 130). Appellant then told him "don't do anything. All you got to do is drop me off and I won't do anything to you." (T. at 130). Appellant then told Morales to drop him off at the hotel located in front of Costco, which he did. (T. at 130-131). Appellant then exited the vehicle and walked away. (T. at 131). Morales returned to work, and, after speaking to his girlfriend, called the police to report the incident. (T. at 131-132). After work, Morales went home. (T. at 132-133). Morales was later asked to go to the police station. (T. at 132-133). His mother insisted on going with him to the police station. (T. at 133). He recalled that his mother rode in the backseat of his car rather than the passenger seat, because she did not want to contaminate any potential fingerprint evidence. (T. at 133). Once at the station, Morales spoke to the police, made a written statement, was fingerprinted, and had a picture taken of the injury to his finger. (T. at 134, 137). Fingerprints were also taken from the vehicle. (T. at 134-135). Morales stated that he returned to the police department and was able to identify Appellant from pictures shown to him by the detectives. (T. at 137). Morales was also re-interviewed by the police. (T. at 137).

**{¶6}** The jury also heard testimony from Detective David Leighty, a detective assigned to the investigations unit at the Westerville Police Department. (T. at 167). Det. Leighty recalled his interview with Mr. Morales. (T. at 171-172, 177). He recalled that Morales gave them a description of the suspect. (T. at 172). He also recalled that they processed Morales' vehicle for fingerprint and DNA evidence. (T. at 172-173). He also took photographs of Morales' injured finger. (T. at 175-176). Det. Leighty explained that during his investigation he retraced the route described by Morales. (T. at 177-178). He also reviewed the surveillance video from the Chase ATM, as well as video footage from local businesses. (T. at 179-181). He further testified that Morales was able to identify Appellant Mark Hayes from a photo array. (T. at 182).

**{¶7}** On January 31, 2018, the jury returned guilty verdicts on both counts of robbery.

**{¶8}** On February 8, 2018, the trial court determined that the two robbery charges should be merged and proceeded to sentence Appellant to serve seven (7) years in prison.

**{¶9}** Appellant now appeals.

*Assignments of Error*

**{¶10}** Counsel for Appellant Hayes has filed a Motion to Withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) asserting two potential assignments of error:

**{¶11}** "I. APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE APPELLANT'S TRIAL COUNSEL WAS DEFICIENT AT TRIAL, WITH RESULTING PREJUDICE.

**{¶12}** "II. HAYES' ROBBERY CONVICTIONS SHOULD BE REVERSED BECAUSE THE STATE'S EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW, AND THE EVIDENCE WEIGHED HEAVILY AGAINST CONVICTION."

*Law and Analysis*

**{¶13}** In *Anders*, the United States Supreme Court held if, after a conscientious examination of the record, a defendant's counsel concludes the case is wholly frivolous, then he should so advise the court and request permission to withdraw. 386 U.S. at 744. Counsel must accompany his request with a brief identifying anything in the record that could arguably support his client's appeal. *Id.* Counsel also must: (1) furnish his client with a copy of the brief and request to withdraw; and, (2) allow his client sufficient time to raise any matters that the client chooses. *Id.* Once the defendant's counsel satisfies these requirements, the appellate court must fully examine the proceedings below to determine if any arguably meritorious issues exist. If the appellate court also determines that the appeal is wholly frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or may proceed to a decision on the merits if state law so requires. *Id.*

**{¶14}** By Judgment Entry filed June 11, 2018, this Court noted that counsel had filed an *Anders* brief and had indicated to the Court that he had served Appellant with the brief. Accordingly, this Court notified Appellant via Certified U.S. Mail that he "may file a pro se brief in support of the appeal on or before July 16, 2018."

**{¶15}** Appellant has not filed a pro se brief

**{¶16}** We find Appellant's counsel in this matter has adequately followed the procedures required by *Anders.*

I.

*Ineffective assistance of counsel*

**{¶17}**  To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).*

**{¶18}**  "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

**{¶19}**  Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

**{¶20}**  Upon review, we see no indication in the record that counsel was ineffective. While counsel references the introduction of certain hearsay statements by Det. Leighty with regard to his interview with the victim, we find no unfair prejudice to Appellant as a result as such statements were entirely consistent with the victim's own statements.

**{¶21}** We do not find the decision by trial counsel to not object to such statements to rise to the level of incompetence nor do we find that the outcome of the trial would have different.

II.

*Manifest weight and sufficiency of the evidence*

**{¶22}** Counsel has also proposed an assignment of error that challenges the sufficiency of the evidence as well as the manifest weight of the evidence. However, in the body of his brief, he presents no articulable argument in support of these assignments other than Appellant's version of the events which transpired on the day in question was different than that of Mr. Morales.

**{¶23}** In reviewing a challenge to the sufficiency of evidence, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, appellate courts will not weigh evidence or assess credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). *State v. Perez*, 6th Dist. Wood No. WD-17-017, 2018-Ohio-1956, ¶ 20. We find there was sufficient evidence presented to the jury wherein a rational trier-of-fact could have found the essential elements of robbery.

**{¶24}** In a manifest weight challenge, we must determine whether the greater amount of credible evidence supports the conviction. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. This Court sits as if the "thirteenth juror" and must review the record, weigh the evidence and all reasonable inferences drawn from it,

consider the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier-of-fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See State v. Leech*, 6th Dist. Lucas No. L-13-1156, 2015-Ohio-76, ¶ 32, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Our review of the evidence finds no indication that the jury lost its way and created a manifest miscarriage of justice.

**{¶25}** We therefore find no merit to these proposed assignments presented by appellant.

Conclusion.

**{¶26}** After independently reviewing the record, we agree with counsel's conclusion that no arguably meritorious claims exist upon which to base an appeal. Hence, we find the appeal to be wholly frivolous under *Anders,* grant counsel's request to withdraw, and affirm the judgment of the Delaware County Court of Common Pleas.

By: Wise, John, P. J.

Hoffman, J., and

Wise, Earle, J., concur.

JWW/d 0823