[Cite as *State v. Bonner*, 2018-Ohio-3083.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio

Appellee

v.

Alonzo Bonner, Jr.

Appellant

Court of Appeals No. E-17-043

Trial Court No. 2016-CR-326

**DECISION AND JUDGMENT**

Decided: August 3, 2018

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Martha S. Schultes, Assistant Prosecuting Attorney, for appellee.

Edward J. Stechschulte, for appellant.

* * * * *

**JENSEN, J.**

## I. Introduction

{¶ 1} This is an appeal from the judgment of the Erie County Court of Common

Pleas, sentencing appellant, Alonzo Bonner, Jr., to 18 months in prison following a jury's

determination of guilt on one count of felonious assault.

## A. Facts and Procedural Background

{¶ 2} On August 11, 2016, Bonner was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony, along with a repeat violent offender ("RVO") specification. Previously, Bonner served nine years in prison after being convicted of felonious assault with a firearm. *State v. Bonner*, Erie C.P. No. 2007-CR-487. Bonner pleaded not guilty to the charge of felonious assault at his arraignment on August 22, 2016.

{¶ 3} On October 16, 2016, Bonner filed a motion asking the trial court to bifurcate the RVO specification. Through his motion, Bonner sought to prohibit the state from using the factual or legal matters implied by the RVO specification in his trial for felonious assault. On October 20, 2016, the court issued a judgment entry granting the bifurcation. Notably, the court did not issue an order prohibiting references to the implied legal or factual matters. A four-day jury trial commenced on June 27, 2017. The following facts were established at trial.

{¶ 4} On July 30, 2016, police received a 911 call. A neighbor claimed that a riot had broken out at the residence of Bonner's cousin, A.J. A.J. had chosen to host a party for over 30 people after the bars closed. Prior to the incident, neighbors called the police because they were bothered by excessive noise. After police notified her of the problem, A.J. decided to end the party and ordered everyone out of her house.

{¶ 5} Multiple fights occurred once the party moved outside the house. One of these fights involved Bonner's sister, S.B. During the fight, S.B. was hit in the face by

2.

another partygoer, C.L. There are varying accounts as to what happened after C.L. hit S.B. A.J. claims that she was outside trying to get people to leave when Bonner punched her in the face.

{¶ 6} In establishing its case at trial, the state utilized footage from a body camera worn by Officer Kallin St. John at the scene. St. John returned to A.J.'s residence after having previously responded to the noise complaint. The tape begins with A.J. saying "Alonzo Bonner." She went on to state that she "was just trying to get him from in front of my house and everybody hit me." When the officer asked if everybody hit her, she countered, "He hit me." A.J. then asked someone to call her uncle. When the officer asked her if the name was Alfonzo, she yelled "Alonzo." The officer then called a squad to look at her injuries.

{¶ 7} According to Bonner, the incident began when he pulled C.L. off of his sister. Upon release, C.L. attacked S.B. again. As the fight continued, Bonner claims that A.J. attempted to join in. He asserts that he merely pushed A.J. off of S.B., and insists that he never hit her. S.B. agreed that C.L. struck her, however she was unclear as to Bonner's involvement with A.J. because she says everything happened too fast. S.B. was able to recall that C.L. punched her and then ran off. During a recorded phone call that was played at trial, C.L. acknowledged that she was trying to fight S.B. It is undisputed that A.J. presented with injuries consistent with being struck in the face, including two black eyes and a laceration on the side of her face.

3.

{¶ 8} At trial A.J. was the first witness for the state. When asked to identify the people who were at her house on the night in question, she said she did not remember. When asked if she remembered who injured her, she said she was not sure. After asking if she remembered telling the police, firefighters, and detectives who hit her, she responded "no." At that time, the state asked to approach the bench.

{¶ 9} While at the bench, the state indicated that it was surprised and affirmatively damaged by A.J.'s testimony and her alleged lack of recollection. Before allowing the defense to respond, the judge asked if the state wanted to treat A.J. as a hostile witness and cross-examine her utilizing evidence of prior inconsistent statements. Defense counsel stated that A.J. had done the same thing with the parole board and that the prosecution should not have been surprised by A.J.'s testimony. Defense counsel noted his objection for the record, and the objection was overruled. Ultimately, the state was permitted to examine A.J. as a hostile witness.

{¶ 10} When the proceedings resumed, the state immediately pivoted, discussing photos of A.J.'s injuries. The state utilized leading questions during the remainder of its direct examination of A.J. Eventually, A.J. acknowledged that she had previously identified Bonner as the individual who hit her during conversations with law enforcement personnel and at Bonner's prior parole hearing. Officer St. Clair, detective Ken Nixon, and firefighter, James Burrer, each testified and indicated that A.J. identified Bonner as the perpetrator of her injuries during their investigation. During Nixon's testimony, he referenced a medical report from A.J.'s hospital visit where a nurse

4.

recorded that A.J. had said her boyfriend punched her. However, when he questioned A.J., she stated that she did not have a boyfriend. Nixon went on to indicate that A.J. identified Bonner as the individual that hit her.

{¶ 11} A.J. initially said that she did not remember if she had done anything to provoke Bonner. Later in her testimony, however, A.J. admitted that she previously stated that the punch was unprovoked. A.J. also insisted that she had not acted aggressively toward S.B. prior to being hit by Bonner.

{¶ 12} During his case-in-chief, Bonner called four witnesses: C.L., G.R. (another partygoer), S.B., and Nixon. Bonner also took the stand in his own defense. For her part, C.L. asserted her Fifth Amendment privilege, and offered no further testimony. During G.R.'s testimony, he stated that the area around A.J.'s house had erupted in multiple fights on the night of the incident. Further, G.R. testified that he saw Bonner help S.B. off the ground. S.B. also testified as to the existence of multiple fights outside A.J.'s residence. She recounted being attacked by C.L., and also testified that C.L. ran away after a disorienting confrontation. Nixon testified concerning jail phone calls that he uncovered during his investigation, one of which included a conversation involving C.L., where she claimed Bonner punched A.J. Nixon also referenced a medical report documenting A.J.'s statements to a nurse identifying the attacker as her boyfriend. Nixon testified that A.J. denies making this identification.

{¶ 13} When testifying, Bonner first described the incident. Bonner's counsel then asked about his past criminal history. When asked what he had been convicted of in

5.

the past, Bonner replied felonious assault.  He confirmed that the felonious assault happened in 2007, when he was 19 years old.  When asked what the altercation was about, Bonner gave the following response:

> Um, me and an older gentleman, roughly I think he was like 28 at the time, I was – was younger, we got into an altercation because was standing, was standing there kickin' (inaudible) or whatever you want to call it.  I was drinking and, um, one thing lead to another.  We started fighting and I end up shoot – I ended up, at the end, shooting out a street light.

{¶ 14} On cross-examination, the prosecutor asked Bonner numerous questions regarding his prior conviction:

> Q:  You talked a little bit about your prior criminal record with your –
>
> A:  Yes
>
> Q:  -- counsel here.  I'd like to talk a little more about that.  You were convicted of felonious assault, correct?
>
> A:  Yes.
>
> Q:  And you were also convicted of having a gun while committing the felonious assault.
>
> A:  I stated that, yes

6.

Q: Okay. And when – when this altercation happened on July 28th 2007, you were fighting with –

A: Keith Fenderson

Q: Mr. Fenderson, yes, yes. In fact, the first thing you did to Keith Fenderson was punch him in the mouth, correct?

A: It was a full blown fist fight.

Q: So you punched him in the mouth. He was bleeding from the mouth?

A: He hit me first, yes.

Q: And your reaction was to punch him in the mouth, correct?

A: (Inaudible) he slapped me first

Q: Say – could you answer yes or no –

A: No

Q: -- please, sir? So you didn't punch him in the mouth?

A: Yes, I did

Q: Okay, your method of fighting, then, correct?

A: No

Q: Just like you punched [A.J.] in the mouth and had her bleeding from her face as well.

A: No

Q: And when Mr. Fenderson was punched in the mouth by you, he took off running; isn't that right?

A: No

Q: And you chased him down with a gun; isn't that right?

A: No

Q: And the gun that you shot at him actually didn't shoot -- you said a streetlight. I believe it actually shot a glass window, didn't it?

A: Maybe

Q: Yeah. So it wasn't like you were shooting up at a -- at a streetlight. You shot at the defendant. Or, I'm sorry, Mr. Fenderson who was running away

A: No

Q: Okay. And you were sentenced to nine years in prison --

A: yes

\* \* \*

Q: [a]nd, in the process, [you] were throwing punches because that's what you do, you throw punches?

{¶ 15} After Bonner replied in the negative, the state responded, "You threw punches at Mr. Ferguson."

8.

{¶ 16} The state reiterated Bonner's prior conviction during its closing arguments, stating:

It happened in 2007 when he was a young kid. I think he said 18 years old, um, and this was with a gun, too. But how did that altercation start. He got into a fight with another man. What's his first instinct? POW, punch him right in the face, make him bleed. Huh, sounds familiar? Just like he did to [A.J.].

{¶ 17} The state then restated the felonious assault charge that was associated with Bonner's prior act.

{¶ 18} During jury instructions, the court found that the evidence did not support an instruction as to the defense of others. The trial court proceeded to limit the jury's consideration of the prior acts evidence to issues pertaining to credibility. Further, the court instructed the jury on the lesser offense of aggravated assault in violation of R.C. 2903.12, a felony of the fourth degree, explaining to the jury that it would sentence Bonner under that offense if the jury found him guilty of both felonious assault and aggravated assault. The jury returned a guilty verdict on both offenses, and the court proceeded to sentence Bonner under the aggravated assault offense.

{¶ 19} At sentencing, the court considered the severity of the crime, the fights on A.J.'s property, and the conflicting stories. The court applied R.C. 2929.11 in considering Bonner's criminal history and risk of recidivism. The court stated that inconsistencies between A.J. and his sister's story were factors in giving him the

9.

maximum sentence for aggravated assault. Furthermore the court gave him credit for 89 days served. Other days in dispute were said to stem from a parole violation. The court proceeded to sentence Bonner to 18 months in prison for aggravated assault. Bonner's timely notice of appeal followed.

## B. Assignments of Error

{¶ 20} On appeal, Bonner presents the following assignments of error for our review:

Assignment of Error No. 1: Appellant was deprived of his right to a fair trial by the admission of extensive details about Appellant's prior conviction for the same offense in violation of Evid.R. 403 and Evid.R. 607.

Assignment of error No. 2: The prosecuting attorney's remarks during the trial and closing arguments constituted prosecutorial misconduct that deprived Appellant of a fair trial in violation of Fifth and Fourteenth Amendments to the United States constitution and comparable provisions of the Ohio Constitution.

Assignment of error No. 3: The trial court abused its discretion in refusing to instruct the jury on the question of defense of others as requested by Mr. Bonner's attorney.

10.

Assignment of error No. 4: The trial court failed to consider the seriousness and recidivism factors of R.C § 2929.12 and, therefore, the 18-month maximum sentence is clearly and convincingly contrary to law.

Assignment of error no. 5: The trial court erred by permitting the State to treat Victim 1 as a hostile witness under evidence rule 607.

Assignment of error No. 6: The trial court erred in not properly granting Mr. Bonner jail time credit.

Assignment of error No. 7: The Jury's verdict finding Appellant guilty of felonious assault and aggravated assault was against the manifest weight of the evidence.

## II.  Analysis

### A.  Use of prior acts evidence

{¶ 21} In his first assignment of error, Bonner argues that he was deprived of his right to a fair trial by the admission of evidence concerning his prior felonious assault conviction. In the second assignment of error, Bonner contends that the state's remarks during the trial and closing arguments constituted prosecutorial misconduct that deprived him of a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution. Because these assignments of error are interrelated, we will address them together.

{¶ 22} At the outset, we note that Bonner did not object to the state's examination of his prior felonious assault conviction during trial, nor did he object to the state's

11.

reference to such conviction during closing arguments. Therefore, our review is limited to plain error. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. *State v. Hill*, 92 Ohio St.3d 191, 200, 749 N.E.2d 274 (2001), citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (observing that the "first condition to be met in noticing plain error is that there must be error"). Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. *State v. Sanders*, 92 Ohio St.3d 245, 257, 750 N.E.2d 90 (2001), citing *State v. Keith*, 79 Ohio St.3d 514, 518, 684 N.E.2d 47 (1997). Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. *See, e.g., Hill* at 205; *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶ 23} "Under [Evid.R. 609(A)(2)], evidence that the defendant was convicted of a crime punishable by death or imprisonment in excess of one year is admissible for purposes of impeaching the witness's credibility 'if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *State v. Eisele*, 9th Dist. Medina No. 13CA0044-M, 2014-Ohio-873, ¶ 6. Where such evidence is admissible under Evid.R. 609, "the fact

12.

of the conviction may be proved only by the testimony of the witness on direct or cross-examination, or by public record shown to the witness during his or her examination." Evid.R. 609(F).

{¶ 24} Relatedly, Evid.R. 404(B) provides, in relevant part:

(B) Other Crimes, Wrongs or Acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 25} "With regard to each allegation of [prosecutorial] misconduct, we must determine whether the conduct was 'improper, and, if so, whether [it] prejudicially affected substantial rights of the defendant.'" *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 110, quoting *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).  "If a defendant failed to object to the alleged misconduct below, however, we review the claim for plain error." *Id.* at ¶ 111.

{¶ 26} During Bonner's direct examination, his counsel asked about his prior conviction for felonious assault.  Bonner gave a brief description of an incident in which he participated in a fight with another individual, Keith Fenderson, and shot out a streetlight.  During cross-examination, the state inquired further into the prior felonious assault conviction.  The state asked: "The first thing you did to [Fenderson] was punch him in the mouth, correct?"  Bonner replied that "it was a full blown fist fight."  After

13.

Bonner said that Fenderson hit him first, the state asked, "[A]nd your reaction was to punch him in the mouth correct?" Bonner admitted to punching Fenderson, and the state asked, "OK, your method of fighting then, correct?" Bonner replied in the negative. The state then inquired, "Just like you punched [A.J.] in the mouth and had her bleeding from her face?" The state implied through further questioning that Fenderson took off running and that Bonner chased after him and shot at him. After Bonner agreed that he became involved in this case in order to protect his sister, the prosecutor stated, "and, in the process, [you] were throwing punches because that's what you do. You throw punches." The state returned to its theme during closing arguments when it stated, "What's his first instinct? POW, punch him right in the face, make him bleed. Huh, sounds familiar? Just like he did to [A.J.]."

{¶ 27} Bonner argues that the above-referenced questioning constituted an impermissible attempt to establish that Bonner was guilty in this case because he was simply acting in conformity with his prior actions. The state offers several arguments in support of its examination of Bonner's prior felonious assault conviction.

{¶ 28} Initially, the state argues that its use of the evidence of Bonner's prior conviction was designed to impeach Bonner by calling into question Bonner's truthfulness in stating that he only pushed A.J. We find no merit to this argument. As noted above, evidence of a prior conviction "is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B). Upon examination of the manner in which the state utilized the evidence of Bonner's prior

14.

conviction, it is clear that the state's intent was to demonstrate Bonner's guilt by reference to his prior conduct and action in conformity therewith in the present case. Tellingly, the state asserts in its brief that "[e]ven if his prior conviction had minimal probative value, it is admissible to show that Bonner *has a trait of lashing out with his fists*." (Emphasis added.) At trial, the state referenced the prior conviction to demonstrate Bonner's propensity toward violence, inviting the jury to conclude that, because Bonner was previously involved in a fight and punched someone, he must have punched A.J. in this case. The state's improper inference was made evident when it stated, "that's what you do, you throw punches."

{¶ 29} This strategy was made even clearer during the state's closing argument, where it stated: "It happened in 2007 when he was a young kid. I think he said 18 years old, um, and this was with a gun, too. But how did that altercation start. He got into a fight with another man. What's his first instinct? POW, punch him right in the face, make him bleed. Huh, sounds familiar? Just like he did to [A.J.]." Under Evid.R. 404(B), the state's use of Bonner's prior conviction to establish action in conformity therewith was improper.

{¶ 30} The state attempts to avoid the conclusion that it ran afoul of Evid.R. 404(B) by noting that Bonner opened the door to its questioning concerning the felonious assault conviction. While it is true that Bonner opened the door, the Supreme Court of Ohio has made it clear that the door is only open for a limited purpose:

15.

With respect to the prior convictions of appellant, we find that the state's inquiries were permissible because appellant testified about them during direct examination, thereby opening the door for the state to question him about them on cross-examination. However, we find that the state's inquiries concerning the circumstances surrounding the crimes for which appellant was convicted and other instances of criminal conduct by appellant were impermissible. Both the record and the state's brief indicate that the prosecutor's reason for making the inquiries was not to impeach appellant by attacking his credibility, but was to show appellant's bad moral character and propensity to commit violent crimes. *State v. Williams*, 38 Ohio St.3d 346, 350, 528 N.E.2d 910 (1988).

{¶ 31} Likewise, in this case the state's purpose behind exploring Bonner's prior conviction was to demonstrate his propensity to commit acts of violence, not to merely impeach his testimony. Therefore, we find that the state's use of Bonner's prior conviction was improper. However, in order to conclude that the trial court committed plain error, we must examine whether such use affected Bonner's substantial rights.

{¶ 32} Under the plain error analysis that is applicable here, Bonner is required to demonstrate "a reasonable *probability* that the error resulted in prejudice." (Emphasis sic.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. Therefore, Bonner would have to show "that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *United States v.*

*Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004), quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 33} Given the fact that Bonner opened the door to his prior conviction, the mere fact of the conviction and the identification of the crime as felonious assault was admissible. Moreover, the state's questioning regarding the details of the incident was permissible given the fact that Bonner provided some of those details in response to defense counsel's questions on direct examination. However, the statements made by the state concerning Bonner's propensity toward violence, and the questions posed to Bonner to elicit such a conclusion, were inadmissible.

{¶ 34} The record includes evidence of several witnesses who reported being informed by A.J. that Bonner had hit her, as well as body camera footage where A.J. states, "he hit me * * * Alonzo." Although Bonner claims that he merely pushed A.J., A.J.'s condition immediately following the incident and the medical records establish that she suffered injuries that exceeded those she would be expected to suffer had she simply been pushed by Bonner. In light of this inculpatory evidence, we find that Bonner has not demonstrated a reasonable probability that the aforementioned errors altered the outcome of the proceedings. Thus, he has failed to establish plain error.

{¶ 35} Accordingly, we find Bonner's first and second assignments of error not well-taken.

## B. Hostile Witness Under Evid.R. 607

{¶ 36} In his fifth assignment of error, Bonner argues that it was improper for the court to impeach A.J. as a hostile witness, after she testified that she could not recall who hit her on the night of the incident.

{¶ 37} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343, 348 (1987). A new trial will only be given if there was an abuse of discretion. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Leo v. Burge Wrecking, LLC*, 2017-Ohio-2690, 89 N.E.3d 1268, ¶ 9 (6th Dist.).

{¶ 38} "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage." Evid.R. 607. A questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact. *Id.*

> This court has long adhered to the principle that "when taken by surprise by the adverse testimony of its own witness, * * * the state may interrogate such witness concerning his prior inconsistent * * * statement * * * for the purpose of refreshing the recollection of the witness, but not for the purpose of offering substantive evidence against the accused." *State*

*v. Dick*, 27 Ohio St.2d 162, 165, 271 N.E.2d 797, 799 (1971), quoting *State v. Duffy*, 134 Ohio St. 16, 17, 15 N.E.2d 535 (1938).

{¶ 39} Along these lines, the staff notes to Evid.R. 607 state, in relevant part:

Rule 607 abolishes the general principle, preserving the "voucher rule" in those limited cases in which impeachment by the party calling the witness is predicated upon a prior inconsistent statement unless surprise and affirmative damage can be shown. Otherwise, the party would be entitled to call a known adverse witness simply for the purpose of getting a prior inconsistent statement into evidence by way of impeachment, thus doing indirectly what he could not have done directly.

Requiring a showing of affirmative damage is intended to eliminate an "I don't remember" answer or a neutral answer by the witness as a basis for impeachment by a prior inconsistent statement.

*Id.*

{¶ 40} A party can show surprise if it can be shown "the testimony is materially inconsistent with the prior written or oral statements and counsel did not have reason to believe that the witness would recant when called to testify." *State v. Holmes*, 30 Ohio St.3d 20, 23, 506 N.E.2d 204, 207 (1987). "'Affirmative damage' exists when a witness's trial testimony contradicts, denies, or harms the case of the party who called that witness; it does not exist when a witness denies knowledge or fails to remember." *State v. Johnson*, 2d Dist. No. 26055, 2015-Ohio-5491, 55 N.E.3d 648, ¶ 33.

19.

{¶ 41} To justify treating a witness as hostile for the purpose of impeaching with prior inconsistent statements, the court must find a witness's testimony affirmatively damaged the case of the counsel directing them. Here, the state claims to have been surprised and affirmatively damaged when A.J. claimed to be unsure of the identity of her assailant. As the notes to Evid.R. 607 clearly explain, this rule is not intended for the type of circumstance where someone simply claims that they cannot remember. Moreover, A.J.'s reluctant identification of Bonner at the parole hearing put the state on notice that she may be unwilling to identify Bonner at trial. Since the state has not shown that it was affirmatively damaged or surprised by A.J.'s answers, we find that it was improper for the state to impeach A.J. as a hostile witness.

{¶ 42} Having decided that the trial court erred in allowing A.J. to be treated as a hostile witness under Evid.R. 607, we must now look at the error to determine if it was harmless.

{¶ 43} Crim.R. 52(B) defines harmless error and provides, "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." During a harmless error inquiry, the state has the burden of proving that the error did not affect the substantial rights of the defendant. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 23. "The term 'substantial rights' has been interpreted to require that the error must have been *prejudicial.*" *Id.* at ¶ 23. Both the error's impact on the verdict and the weight of the remaining evidence must be considered on appellate review. *Id.* In determining "whether a new trial is required or the error is harmless

20.

beyond a reasonable doubt, the court must excise the improper evidence from the record and then look to the remaining evidence." *Id.* at ¶ 29.

{¶ 44} Upon consideration, we find that the erroneously admitted evidence had little impact on the verdict in light of the remaining admissible evidence on the issue of A.J.'s identification of Bonner as her assailant. At trial, the state introduced body camera footage that included A.J.'s identification of Bonner to Officer St. Clair immediately following the incident. Burrer and Nixon each testified that A.J. identified Bonner as her assailant, and Nixon reflected A.J.'s identification in his police report following the incident. Further, A.J. had previously identified Bonner as her assailant during Bonner's previous parole hearing.

{¶ 45} Given the foregoing evidence pertaining to A.J.'s identification of Bonner as her assailant, we find beyond a reasonable doubt that the outcome was not affected by A.J.'s treatment as a hostile witness. Thus, the trial court's error under Evid.R. 607 was harmless, and Bonner's fifth assignment of error is not well-taken.

### C. Jury Instructions

{¶ 46} In his third assignment of error, Bonner argues that the trial court improperly failed to include a jury instruction for defense of others.

> [I]t is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge. *State v. Nelson*, 36 Ohio St.2d 79, 303 N.E.2d 865 (1973). However, the court need not administer the

21.

requested order in the exact language presented. *Id*. at 84. Further, the court may refuse to give an instruction as to a matter which is not applicable to the facts governing the case. *Romeo v. State*, 39 Ohio App. 309, 177 N.E. 483 (5th Dist.1931). *State v. Scott*, 26 Ohio St.3d 92, 101, 497 N.E.2d 55, 63 (1986).

{¶ 47} We review a trial court's refusal to give a requested jury instruction for an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

{¶ 48} "To establish a claim of self-defense, a defendant must show that (1) he was not at fault in creating the situation giving rise to the event, (2) he had a bona fide belief that he was in imminent danger of bodily harm, and (3) he did not violate any duty to retreat or avoid the danger." *State v. Belanger*, 190 Ohio App.3d 377, 2010-Ohio-5407, 941 N.E.2d 1265, ¶ 4 (3d Dist.).

{¶ 49} Here, Bonner supported his theory of defense of others by referencing C.L.'s assault of S.B. Bonner fails to articulate, and the record fails to support, any indication that S.B. was in threat of harm at the hands of A.J. Thus, the trial court did not abuse its discretion in refusing to instruct the jury on the affirmative defense of defense of others.

{¶ 50} Accordingly, Bonner's third assignment of error is not well-taken.

22.

## D. Seriousness and Recidivism Factors Under R.C. 2929.12

**{¶ 51}** In his fourth assignment of error, Bonner argues that the court erred at sentencing by failing to consider the seriousness and recidivism factors under R.C. 2929.12.

> R.C. 2929.12 is a guidance statute. It sets forth the seriousness and recidivism criteria that a trial court "shall consider" in fashioning a felony sentence. * * * While the phrase "shall consider" is used throughout R.C. 2929.12, the sentencing court is not obligated to give a detailed explanation of how it algebraically applied each seriousness and recidivism factor to the offender. Indeed, no specific recitation is required. State v. Arnett (2000), 88 Ohio St.3d 208, 215, 724 N.E.2d 793. Merely stating that the court considered the statutory factors is enough. *Id*. *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, 960 N.E.2d 1042, ¶ 11 (6th Dist.).

**{¶ 52}** During sentencing, the trial court stated the following with respect to its consideration of the seriousness and recidivism factors under R.C. 2929.12:

> First off, under 2929.11, the law says the Court - what's the purposes and principles of sentencing? What's the Court supposed to do? It's supposed to punish you for your behavior and protect society from future crimes by you, and in doing that, the Court has to look under factors under 2929.12 that deal with less serious versus more serious, less recidivism

23.

versus more recidivism, and in looking at the recidivism factor, the Court has to look at your past record.

Further, the court stated in its sentencing entry that it had "considered, weighed, and made findings of the sentencing factors for * * * the imposition of a Prison/Jail term (O.R.C. 2929.12 / 2929.13 / 2929.22 et. seq.). This Court finds Defendant is not amenable to Community Control Sanctions which is consistent with the applicable statutes."

{¶ 53} Bonner argues that because he received a maximum sentence, the factors must not have been properly considered. Bonner does not dispute that the record clearly demonstrates that the trial court actually considered the factors. As we noted in *Brimacombe*, the court must only show that it considered the factors in order to comply with R.C. 2929.12. Therefore, we find no merit to Bonner's arguments.

{¶ 54} Accordingly, Bonner's fourth assignment of error is not well-taken.

### E. Jail-time Credit

{¶ 55} In his sixth assignment of error, Bonner argues that the trial court erred in its calculation of jail-time credit. Specifically, Bonner contends that he was entitled to 355 days of credit rather than the 93 days he received.

R.C. 2967.191 requires the department of rehabilitation and correction to "reduce the stated prison term of a prisoner * * * by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including

confinement in lieu of bail while awaiting trial * * *." While it is the department's duty to credit a prisoner for his pretrial confinement, it is the trial court that calculates the number of days the offender served prior to being sentenced. *State v. Whitaker*, 4th Dist. Ross No. 02CA2691, 2003-Ohio-3231, ¶ 4.

{¶ 56} Here, the trial court's calculation of Bonner's jail-time credit was based upon the fact that Bonner was in prison on a parole violation all but 93 days prior to trial. Since these days did not "arise out of the offense for which the prisoner was convicted" under R.C. 2967.191, the trial court did not err in excluding them when calculating Bonner's jail-time credit.

{¶ 57} Accordingly, Bonner's sixth assignment of error is not well-taken.

### F. Manifest Weight of the Evidence

{¶ 58} In his seventh assignment of error, Bonner asserts that the jury's verdict was against the manifest weight of evidence.

{¶ 59} In a manifest weight challenge, we must determine whether the greater amount of credible evidence supports the conviction. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. This court sits as if the "thirteenth juror" and must review the record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier-of-fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See*

25.

*State v. Leech*, 6th Dist. Lucas No. L-13-1156, 2015-Ohio-76, ¶ 32, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 60} As to Bonner's conviction for felonious assault, R.C. 2903.11 provides:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another * * *.

{¶ 61} As discussed above, the record contains several instances in which A.J. identified Bonner as the individual who attacked her.  Further, while Bonner acknowledged pushing A.J., the serious physical harm suffered by A.J. is not consistent with a mere push or shove.  Rather, A.J.'s injuries, which were well-documented at trial, are the result of a strike meant to cause serious physical harm.  Given the evidence demonstrating that Bonner struck A.J. in the face causing her serious physical harm, we find that the jury did not lose its way in finding Bonner guilty of felonious assault. Therefore, the verdict is not against the manifest weight of the evidence, and Bonner's seventh assignment of error is not well-taken.

### III.  Conclusion

{¶ 62} In light of the foregoing, the judgment of the Erie County Court of Common Pleas is affirmed.  Bonner is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                              _____
                                                                                  JUDGE

Arlene Singer, J.                              

                                                                      _____
James D. Jensen, J.                                                JUDGE
CONCUR.

                                                                      _____
                                                                                  JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.